# UNITED STATES *v.* NATIONAL DAIRY PRODUCTS CORP. ET AL.

No. 18.   Argued March 21, 1962.—Restored to the calendar for reargument April 2, 1962.—Reargued December 5, 1962.—Decided February 18, 1963.

*Daniel M. Friedman* reargued the cause for the United States.   With him on the briefs were *Solicitor General Cox, Assistant Attorney General Loevinger* and *Lionel Kestenbaum.*

*John T. Chadwell* reargued the cause for appellees. With him on the briefs were *Richard W. McLaren, James A. Rahl, Jean Engstrom, Martin J. Purcell* and *John H. Lashly.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This case involves the question whether § 3 of the Robinson-Patman Act, 15 U. S. C. § 13a, making it a crime to sell goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor," is unconstitutionally vague and indefinite as applied to sales made *below cost* with such purpose.   National Dairy and Raymond J. Wise, a vice-president and director, upon being charged, *inter alia,* with violating § 3 by making sales below cost for the purpose of destroying competition, moved for dismissal of the Robinson-Pat-

man Act counts of the indictment on the ground that the statute is unconstitutionally vague and indefinite. The District Court granted the motion and ordered dismissal. On direct appeal under the Criminal Appeals Act, 18 U. S. C. § 3731, we noted probable jurisdiction, 368 U. S. 808, because of the importance of the issue in the administration of the Robinson-Patman Act. We have concluded that the order of dismissal was error and therefore remand the case for trial.

## I.

National Dairy is engaged in the business of purchasing, processing, distributing and selling milk and other dairy products throughout the United States. Through its processing plant in Kansas City, Missouri, National Dairy has for the past several years been in competition with national concerns and various local dairies in the Greater Kansas City area and the surrounding areas of Kansas and Missouri. In the Greater Kansas City market National Dairy distributes its products directly, but cities and towns in the surrounding Kansas and Missouri areas outside this market are served by independent distributors who purchase milk from National Dairy and resell on their own account.

The indictment charged violations of both the Sherman Act, 15 U. S. C. § 1, and the Robinson-Patman Act in Kansas City and in six local markets in the adjacent area.[1] The Robinson-Patman counts charged National

---

[1] Seven counts of the 15-count indictment charged violations of § 3 of the Robinson-Patman Act. The Sherman Act and Robinson-Patman Act counts relate to the same course of conduct.

One Robinson-Patman count, number 13, charges Raymond J. Wise, a vice-president and director of National, with authorizing National's pricing practice and ordering its effectuation in the Kansas City market. *United States* v. *Wise*, 370 U. S. 405 (1962), involves two Sherman Act counts of the indictment which named Wise as a defendant.

Dairy and Wise with selling milk in those markets "at unreasonably low prices for the purpose of destroying competition." Further specifying the acts complained of, the indictment charged National Dairy with having "utilized the advantages it possesses by reason of the fact that it operates in a great many different geographical localities in order to finance and subsidize a price war against the small dairies selling milk in competition with it . . . by intentionally selling milk [directly or to a distributor] at prices below National's cost." In five of the markets National Dairy's pricing practice was alleged to have resulted in "severe financial losses to small dairies," and in two others the effect was claimed to have been to "eliminate competition" and "drive small dairies from" the market.

National Dairy and Wise moved to dismiss all of the Robinson-Patman counts on the grounds that the statutory provision, "unreasonably low prices," is so vague and indefinite as to violate the due process requirement of the Fifth Amendment and an indictment based on this provision is violative of the Sixth Amendment in that it does not adequately apprise them of the charges. The District Court, after rendering an oral opinion holding that § 3 of the Robinson-Patman Act is unconstitutionally vague and indefinite, granted the motion and ordered dismissal of the § 3 counts. The case came here on direct appeal from the order of dismissal.

## II.

National Dairy and Wise urge that § 3 is to be tested solely "on its face" rather than as applied to the conduct charged in the indictment, *i. e.*, sales below cost for the purpose of destroying competition. The Government, on the other hand, places greater emphasis on the latter, contending that whether or not there is doubt as to the validity of the statute in all of its possible applications,

§ 3 is plainly constitutional in its application to the conduct alleged in the indictment.

It is true that a statute attacked as vague must initially be examined "on its face," but it does not follow that a readily discernible dividing line can always be drawn, with statutes falling neatly into one of the two categories of "valid" or "invalid" solely on the basis of such an examination.

We do not evaluate § 3 in the abstract.

> "The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases . . . . [A] limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were . . . presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *United States* v. *Raines,* 362 U. S. 17, 22 (1960).

The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. *E. g., Jordan* v. *De George,* 341 U. S. 223, 231 (1951), and *United States* v. *Petrillo,* 332 U. S. 1, 7 (1947). Indeed, we have consistently sought an interpretation which supports the constitutionality of legislation. *E. g., United States* v. *Rumely,* 345 U. S. 41, 47 (1953); *Crowell* v. *Benson,* 285 U. S. 22, 62 (1932); see *Screws* v. *United States,* 325 U. S. 91 (1945).

Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably

understand that his contemplated conduct is proscribed. *United States* v. *Harriss,* 347 U. S. 612, 617 (1954). In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson* v. *United States,* 324 U. S. 282 (1945). In view of these principles we must conclude that if § 3 of the Robinson-Patman Act gave National Dairy and Wise sufficient warning that selling below cost for the purpose of destroying competition is unlawful, the statute is constitutional as applied to them.[2] This is not to say that a bead-sight indictment can correct a blunderbuss statute, for the latter itself must be sufficiently focused to forewarn of both its reach and coverage. We therefore consider the vagueness attack solely in relation to whether the statute sufficiently warned National Dairy and Wise that selling "below cost" with predatory intent was within its prohibition of "unreasonably low prices."

### III.

The history of § 3 of the Robinson-Patman Act indicates that selling below cost, unless mitigated by some acceptable business exigency, was intended to be prohibited by the words "unreasonably low prices." That sales below cost without a justifying business reason may come within the proscriptions of the Sherman Act has long been established. See, *e. g., Standard Oil Co.* v. *United States,* 221 U. S. 1 (1911). Further, when the Clayton Act was enacted in 1914 to strengthen the Sherman Act, Congress passed § 2 to cover price discrimination by large companies which compete by lowering prices, "oftentimes below the cost of production . . .

---

[2] It should be noted that, in reviewing a case in which a motion to dismiss was granted, we are required to accept well-pleaded allegations of the indictment as the hypothesis for decision. *Boyce Motor Lines* v. *United States,* 342 U. S. 337, 343 (1952).

with the intent to destroy and make unprofitable the business of their competitors." H. R. Rep. No. 627, 63d Cong., 2d Sess. 8. The 1936 enactment of the Robinson-Patman Act was for the purpose of "strengthening the Clayton Act provisions," *Federal Trade Comm'n* v. *Anheuser-Busch, Inc.*, 363 U. S. 536, 544 (1960), and the Act was aimed at a specific weapon of the monopolist—predatory pricing. Moreover, § 3 was described by Representative Utterback, a House manager of the joint conference committee, as attaching "criminal penalties in addition to the civil liabilities and remedies already provided by the Clayton Act." 80 Cong. Rec. 9419.

This Court, in *Moore* v. *Mead's Fine Bread Co.*, 348 U. S. 115 (1954), a case based in part on § 3, recognized the applicability of the Robinson-Patman Act to conduct quite similar to that with which National Dairy and Wise are charged here. The Court said, "Congress by the Clayton Act and Robinson-Patman Act barred the use of interstate business to destroy local business" through programs in which "profits made in interstate activities would underwrite the losses of local price-cutting campaigns." *Id.*, at 120, 119.

In proscribing sales at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor" we believe that Congress condemned sales made below cost for such purpose. And we believe that National Dairy and Wise could reasonably understand from the statutory language that the conduct described in the indictment was proscribed by the Act. They say, however, that this is but the same horse with a different bridle because the phrase "below cost" is itself a vague and indefinite expression in business.

Whether "below cost" refers to "direct" or "fully distributed" cost or some other level of cost computation cannot be decided in the abstract. There is nothing in the record on this point, and it may well be that the issue

will be rendered academic by a showing that National Dairy sold below any of these cost levels. Therefore, we do not reach this issue here. As we said in *Automatic Canteen Co.* v. *Federal Trade Comm'n,* 346 U. S. 61, 65 (1953): "Since precision of expression is not an outstanding characteristic of the Robinson-Patman Act, exact formulation of the issue before us is necessary to avoid inadvertent pronouncement on statutory language in one context when the same language may require separate consideration in other settings."

Finally, we think the additional element of predatory intent alleged in the indictment and required by the Act provides further definition of the prohibited conduct. We believe the notice here is more specific than that which was held adequate in *Screws* v. *United States,* 325 U. S. 91 (1945), in which a requirement of intent served to "relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Id.,* at 102; see *id.,* at 101–107. Proscribed by the statute in *Screws* was the intentional achievement of a result, *i. e.,* the willful deprivation of certain rights. The Act here, however, in prohibiting sales at unreasonably low prices for the purpose of destroying competition, listed as elements of the illegal conduct not only the intent to achieve a *result*—destruction of competition—but also the *act*—selling at unreasonably low prices—done in furtherance of that design or purpose. It seems clear that the necessary specificity of warning is afforded when, as here, separate, though related, statutory elements of prohibited activity come to focus on one course of conduct.

*United States* v. *Cohen Grocery Co.,* 255 U. S. 81 (1921), on which much reliance is placed, is inapposite here. In *Cohen* the Act proscribed "any unjust or unreasonable rate or charge." The charge in the indictment was in the exact language of the statute, and, in specifying the conduct covered by the charge, the indictment did

nothing more than state the price the defendant was alleged to have collected. Hence, the Court held that a "specific or definite" act was neither proscribed by the Act nor alleged in the indictment. *Id.,* at 89. Moreover, the standard held too vague in *Cohen* was without a meaningful referent in business practice or usage. "[T]here was no accepted and fairly stable commercial standard which could be regarded as impliedly taken up and adopted by the statute . . . ." *Small Co.* v. *American Sugar Rfg. Co.,* 267 U. S. 233, 240–241 (1925). In view of the business practices against which § 3 was unmistakably directed and the specificity of the violations charged in the indictment here, both absent in *Cohen,* the proffered analogy to that case must be rejected.

In this connection we also note that the approach to "vagueness" governing a case like this is different from that followed in cases arising under the First Amendment. There we are concerned with the vagueness of the statute "on its face" because such vagueness may in itself deter constitutionally protected and socially desirable conduct. See *Thornhill* v. *Alabama,* 310 U. S. 88, 98 (1940); *NAACP* v. *Button,* 371 U. S. 415. No such factor is present here where the statute is directed only at conduct designed to destroy competition, activity which is neither constitutionally protected nor socially desirable. We are thus permitted to consider the warning provided by § 3 not only in terms of the statute "on its face" but also in the light of the conduct to which it is applied. The reliance of National Dairy and Wise on First Amendment cases is therefore misplaced.

## IV.

This opinion is not to be construed, however, as holding that every sale below cost constitutes a violation of § 3. Such sales are not condemned when made in furtherance of a legitimate commercial objective, such as the

liquidation of excess, obsolete or perishable merchandise, or the need to meet a lawful, equally low price of a competitor. 80 Cong. Rec. 6332, 6334; see *Ben Hur Coal Co. v. Wells,* 242 F. 2d 481 (C. A. 10th Cir. 1957). Sales below cost in these instances would neither be "unreasonably low" nor made with predatory intent. But sales made below cost without legitimate commercial objective and with specific intent to destroy competition would clearly fall within the prohibitions of § 3.

Since the indictment charges the latter conduct and, as noted, *supra,* n. 2, we are bound by the well-pleaded allegations of the indictment, we must conclude that National Dairy and Wise were adequately forewarned of the illegal conduct charged against them and remand the case for trial. Our holding, of course, does not foreclose proof on the merits as to the reasonableness of the alleged pricing conduct or, for that matter, the absence of the predatory intent necessary to conviction.

*Reversed and remanded.*

Mr. Justice Black, with whom Mr. Justice Stewart and Mr. Justice Goldberg join, dissenting.

The statute here involved makes it a crime to sell "goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor." 15 U. S. C. § 13a. In *United States* v. *Cohen Grocery Co.,* 255 U. S. 81 (1921), this Court held unconstitutional and void for vagueness a statute which made it a crime "for any person willfully . . . to make any unjust or unreasonable rate or charge" in dealing in or with any necessaries. The rule established by that case has been often followed,[1] is in my judgment sound, and should control this case. Ac-

---

[1] *E. g., Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (1927); *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939); cf. *United States* v. *Cardiff,* 344 U. S. 174 (1952).

cordingly, I would affirm the District Court's judgment holding the statute invalid. The Court here attempts by interpretation to substitute unambiguous standards for the vague standard of "unreasonably low prices" used by Congress in the statute. It seems to me that if this criminal statute is to be so drastically reconstructed it should be done by Congress, not by us. Moreover, I agree with the Attorney General's National Committee to Study the Antitrust Laws, which concluded:

> "Doubts besetting Section 3's constitutionality seem well founded; no gloss imparted by history or adjudication has settled the vague contours of this harsh criminal law." [2]

---

[2] Atty. Gen. Nat. Comm. Antitrust Rep. 201 (1955) (recommending repeal of § 3).