UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiffs

v.

ST. THOMAS BEACH RESORTS, INC., Defendant

Civil No. 74-339

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 13, 1974

 

─────────────

HONORABLE ISHMAEL MEYERS, Assistant U.S. Attorney, St. Thomas, V.I. *for plaintiff U.S.A.*

JAMES W. SILVER, ESQ., Assistant Attorney General of the V.I., St. Thomas, V.I., *for plaintiff Government of V.I.*

CHARLES S. WAGGONER, ESQ., St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

Plaintiffs in this action are the Governments of the United States and the United States Virgin Islands. The defendant, St. Thomas Beach Resort, Inc., is a Virgin Islands corporation and is the owner of an establishment known as Bolongo Bay Beach and Tennis Club, which borders on the Caribbean Sea in the area of Frenchman's Bay Quarter, St. Thomas, Virgin Islands. The sole relief sought by plaintiffs is an injunction.

The gravamen of the complaint as alleged by plaintiffs is that sometime during the month of March, 1974, defendant erected, or caused to be erected, two fences each approximately nine feet in height, and each of which traverses the beach area adjoining defendant's property and extends into the Caribbean Sea for distances of approximately 50 and 30 feet at the eastern and western extremities, respectively, of the Bolongo Bay Beach and Tennis Club (hereinafter

the Club). It is said by plaintiffs that the portions of the fences seaward of the mean high-tide mark are trespasses upon property belonging to the United States, and that the inland extension of the fences from the mean high-tide mark, within a distance of 50 feet of the mean low-tide mark, obstruct the Virgin Islands shoreline in violation of the Virgin Islands Open Shorelines Act, Chapter 10 of Title 12 of the Virgin Islands Code. Moreover, allege plaintiffs, the erection and the maintenance of these fences by defendant contravene rights of property acquired by the United States of America, as successor sovereign to the Kingdom of Denmark, at the time of the purchase of these islands in 1917. Accordingly, plaintiffs demand the removal of the fences and that defendant be permanently enjoined from maintaining any fences or "other obstruction upon the property of the United States; or any obstruction interfering with the right of the public, individually and collectively to use and enjoy the shoreline of the Virgin Islands".

The defendant answering, freely admits the erection and maintenance of ". . . chain links and barbwire fences approximately 9 feet in height . . . on its inland property and several feet into the water of Bolongo Bay on each end of its inland property line". Beyond denying that its action is in any way wrongful, the defendant urges three affirmative bases for the dismissal of the complaint: (a) that the complaint does not state a cause of action upon which relief can be granted; (b) that the Open Shorelines Act ". . . is unconstitutionally vague and uncertain as to its application and effect"; and (c) that the Open Shorelines Act ". . . is in violation of the Revised Organic Act of 1954, § 3 . . .". These defenses will be addressed in reversed order. For the reasons to be outlined below, in brief, I conclude that the Virgin Islands Open Shorelines Act suffers from no discernible constitutional defect, and that the plaintiffs are entitled to the relief sought.

The broad gauge attack levelled at the statute in question by the defendant in its third defense above focuses on no particular prohibition of section 3 of the Revised Organic Act. It may be gleaned, however, from examination of section 3, the answer and affirmative defense of defendants and the memorandum submitted on behalf of plaintiffs, that the contention of defendant is, that as applied to it in these circumstances, an order directing the removal of the allegedly offending fences and forbidding the future maintenance of any like obstruction, works a "taking" by the governments of property of the defendant without justly compensating it therefor. In any event, it is to this constitutional challenge that we will first direct attention.

In its present posture, the case is before the Court on the plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The joint motion for summary judgment was filed on September 26, 1974. In support thereof, plaintiffs submitted nine affidavits relating to factual matters and one which, with its attachment, dealt with the respective right of the public, the government and abutting property owners of tideland properties as such rights existed under Danish law at about the time of the transfer of these islands. Under Rule 6(f), defendant was required to respond within five days after it had been served with the motion. Receiving no such response, and because of the gravity of the situation, the Court, on or about October 30, 1974, notified defendant, through its counsel, that it was allowed 10 days from that date to comply with the rules regarding response to a motion for summary judgment. To date, nothing has been heard from defendant. As a consequence, the Court will proceed to decide the motion on the strength of the memorandum and affidavits submitted by plaintiffs and the governing rules of law.

■ The proposition is so well settled, as not to require discussion or citation of authority, that summary judgment may be granted where there is no genuine issue as to any material fact, and this is demonstrated by the pleadings, affidavits and other documents submitted. And the rule is no less valid where constitutional or other questions of large public import are raised so long as there is the adequate factual basis in the record to support such a judgment. See 6 Moores Federal Practice, § 56.16 and the host of cases there cited.

■ At the threshold, it must be noted and recognized that submerged lands in the Virgin Islands, necessarily including the Bolongo Bay area, up to the mean high-watermark, are owned by plaintiff, the United States of America.[1] Plaintiff having demonstrated by the affidavit of Stanley C. Carpenter that the defendant did not have the permission of the United States of America to construct or maintain the fences in question, and defendant, by its answer, having admitted thereto, it follows that the defendant has, in fact, committed a trespass on the land seaward of the mean high-watermark and such fences, which constitute the trespass, should be removed. Likewise, by its admission that it has erected and presently maintains fences "on its inland property and several feet into the water of Bolongo Bay on each end of its inland property line", defendant has made clear, beyond peradventure, that the plain language of the Open Shorelines Act has been violated by it. In section 402 of that statute, "Shorelines of the Virgin Islands" are defined to be those areas,

along the coastlines of the Virgin Islands from the seaward line of low-tide, running inland a distance of fifty (50) feet; or to the extreme seaward boundary of natural vegetation which spreads

---

[1] See Red Hook Marina Corp. v. Antilles Yachting Corp., 9 V.I. 236, 242–244 (3 Cir. 1971); Convention Between United States and Denmark, August 4, 1916, 1 V.I.C. p. 27, 39 Stat. 1706, T.S. 629, Art. 6.

continuously inland; or to a natural barrier, whichever is the shortest distance.

And under section 403, the Act commands that,

No person, firm, corporation, association or other legal entity shall create, erect, maintain, or obstruct any obstruction, barrier, or restraint of any nature whatsoever upon, across, or within the shorelines of the Virgin Islands as defined in this section, which would interfere with the right of the public, individually and collectively, to use and enjoy any shoreline.

Unquestionably, these fences erected by defendant create just such an obstruction and manifestly interfere with the right of the public to enjoy the shoreline in that area.

██ Even though defendant's action contravenes the provisions of the Open Shorelines Act, however, this would count for nothing if, in fact, that act infringes upon defendant's property rights and, in fact, takes its property without providing just compensation therefor, for such a deprivation would be constitutionally impermissible by virtue of the Fifth and Fourteenth Amendments to the Constitution of the United States made applicable to the Virgin Islands through section 3 of the Revised Organic Act. This I do not find to be the case, however, for I conclude that the act is constitutionally sound, that whatever defendant's property right in and to Bolongo Bay Beach, they have always been subject to the paramount right of the public to use the said beach as established by firmly, well-settled, long-standing custom. Insofar as this beach front property is concerned, the Open Shorelines Act does no more than merely codify this confirmed right.[2] And if further proof were needed, plaintiffs' unopposed affidavits abundantly support their position that Bolongo Bay Beach was used by the public on a regular and continuing basis

---

[2] As this Court had occasion to note in Red Hook Marina, supra, at p. 43 (n. 19), public use of the beach generally dates back to the period when these islands were under Danish dominium.

84

for swimming and recreation, without permission from, or need of permission of the upland owners, at least from 1923 through March, 1974. Most telling, perhaps, is the affidavit of a former owner of the property now known as Bolongo Bay Beach and Tennis Club. In that affidavit, the former owner states that during her ownership, the beach was "always . . . open for the use of the public for . . . recreational purposes", that she never interfered with the public use of the beach, and that the public never asked her permission to use the beach, "but simply used it as if it were a public beach". See Affidavit of Winia M. Giroux.

I am persuaded that the custom of the inhabitants of the Virgin Islands of using the beach at Bolongo Bay as a public recreation area was not only extant at the time defendant erected its fences, but was notorious.[3] I am satisfied that notice of the custom on the part of persons buying land at Bolongo Bay must therefore be presumed. Because public use of the beach at Bolongo Bay, before defendant erected its fences: (a) existed over a long period of time; (b) was free from dispute and was peaceable; (c) was exercised without interruption by anyone possessing a paramount right; (d) was exercised in a manner appropriate to the beach; (e) was exercised within a definable area; (f) was similar to that at other beaches in the jurisdiction; (g) was not repugnant to other laws, See 1 Blackstone, Commentaries 75–78. I conclude that the Open Shorelines Act has taken nothing from defendant which it had a legitimate reason to regard as its exclusive property or right. See

---

[3] The general custom of using the beaches as if they were public has been affirmed by our own Legislature:

The shorelines of the Virgin Islands have in the past been used freely by all residents and visitors alike. . . .

The Legislature recognizes that the public has made frequent, uninterrupted and unobstructed use of the shorelines of the Virgin Islands throughout Danish rule and under American rule as recently as the nineteen fifties. It is the intent of the Legislature to *preserve what has been a tradition and to protect what has become a right of the public.* (Emphasis added.) 12 V.I.C. Section 401.

State ex rel. Thornton v. Hay, 462 P.2d 671 (S.Ct. Ore. 1969),[4] cited in Red Hook Marina, supra. at p. 240.

Turning next to defendant's "void-for-vagueness" defense, I regard this as no more than "make-weight". Defendant does not state whether it believes the Open Shorelines Act to be unconstitutional for this reason, on its face, or in its application. There is nothing before the Court other than defendant's naked assertion to this effect. Nonetheless, whatever may be the unexpressed contention of the defendant in this regard, I do not believe the act to suffer from vagueness but rather consider it to pass constitutional muster with flying colors. The elements of the void-for-vagueness doctrine have been developed in a large body of precedent, and are categorized in, e.g. Grayned v. City of Rockford, 408 U.S. 104, 108–109 (1972). The doctrine incorporates notions of fair notice or warning.[5] See Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972). As the Supreme Court stated in Conally v. General Construction Company, 269 U.S. 385, 391 (1926):

[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

Legislatures are required by the Constitution to set reasonably clear guidelines for law enforcement officials and triers of fact, in order to prevent "arbitrary and discrimi-

---

[4] Parenthetically, I note that, even were I to find that the public had not established a customary right to use defendant's beach, I would be persuaded that the conduct of former owners of the Bolongo Bay uplands in acquiescing in the public use of the beach and not attempting to prevent or limit such use had in light of the strong public policy expressed in the Open Shorelines Act resulted in an implied dedication to the public of the use of the beach area. See Gion v. City of Santa Cruz, 465 P.2d 50, 58 (S.Ct. 1970). I believe it might also be said that the public has acquired a prescriptive easement appurtenant in the beach for recreational purposes.

[5] I note that because this is not a First Amendment case, Duel Process imposes less stringent requirements upon such a statute in terms of its clarity. See e.g. United States v. National Dairy Products, 372 U.S. 29 (1963).

natory enforcement" of statutes. Grayned, supra. at 108. For me, the Open Shorelines Act meets all of the tests laid down in these cases. It is not as though we were dealing here with a statute like that in Smith v. Goguen, 515 U.S. 566 (1974) where defendant was charged with "publicly . . . treat[ing] contemptuously the flag of the United States", where a particular word in the statute is considered to have a very subjective meaning. We are confronted with an act so clear and straightforward in its terms that read realistically permits of no varied interpretation. I see no semblance of fatal vagueness in the Open Shorelines Act.

The third affirmative defense raised by defendant, that the complaint fails to state a cause of action on which relief can be granted, I find it to be totally devoid of merit and reject out of hand.

On all the foregoing, I conclude that the obstructing fences erected and maintained by defendant cannot be permitted to remain. They must be removed by the defendant and the defendant will be permanently enjoined from erecting any like structures on or over the proscribed area.

Let summary judgment enter accordingly.