STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FRANCIS SCHREIER, JR., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 20, 1975—Decided July 16, 1975.

Before Judges MATTHEWS, FRITZ and BOTTER.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for appellant (*Mr. Allen L. Shulman,* Assistant Deputy Public Defender, of counsel and on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent (*Mr. Peter N. Gilbreth,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

BOTTER, J. A. D. On this appeal we are called upon to determine whether defendant was lawfully convicted for carrying a loaded antique handgun replica without a permit, in apparent violation of *N. J. S. A.* 2A:151–41(a), despite the fact that *N. J. S. A.* 2A:151–18 exempts antique firearms from the provisions of the New Jersey Gun Control Law, *N. J. S. A.* 2A:151–1 *et seq.* Upon conviction in a jury trial, defendant was given a suspended indeterminate "Yardville" sentence, probation for three years and a fine of $1000.

The State offered evidence to show that defendant entered a tavern on the night of April 12, 1972 wearing a gun in a holster on his hip. The gun was a copy of a .44-caliber Colt cap and ball revolver of Civil War vintage. It was loaded with cap, lead ball and black powder in its six chambers. An expert later test fired the gun and found it operable.[1]

In the tavern an off-duty police officer saw defendant wearing the gun, confronted him and called for assistance. De-

---

[1] The expert testified that a cap and ball firearm such as this is fired by a hammer striking a cap which ignites a powder charge which, in turn, propels the lead missile. It contrasts with modern weapons which fire "fixed ammunition," a cartridge which contains the ignition source, powder charge and lead missile in one casing. "Fixed ammunition" is a term used in *N. J. S. A.* 2A:151–18.

fendant was arrested shortly thereafter. There was testimony that defendant said he had come from work, that he worked at an Esso gas station and that he carried the gun for protection. There was also evidence to show that defendant had no permit for the gun. Police records failed to show that the gun had been used in the commission of any crime or offense.

The sole witness for the defense was the proprietor of a licensed gun shop in Irvington, New Jersey. He testified that he sold the gun, a replica of an antique, to defendant sometime before April 12, 1972. It was inferable from his testimony that defendant had no permit when he bought the gun. Defendant finally stipulated that he had no permit to carry the gun, claiming none was necessary.

*N. J. S. A.* 2A :151–41 provides in pertinent part:

Except as hereinafter provided, any person who carries, holds or possesses in any * * * vehicle, or on or about his clothes or person * * * in any public place or public area:

a. A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter; * * *

* * * * * * * *

* * *is guilty of a high misdemeanor.

*N. J. S. A.* 2A :151–18 provides:

This chapter does not apply to antique firearms which are incapable of being fired or discharged or which do not fire fixed ammunition, or those manufactured before 1898 for which cartridge ammunition is not commercially available, and are possessed as curiosities or ornaments or for their historical significance or value.

In *Service Armament Co. v. Hyland,* 131 *N. J. Super.* 38 (App. Div. 1974), certif. granted 67 *N. J.* 80 (1975), *replicas* of antique firearms, in addition to real antiques, were held to be exempted from regulation by *N. J. S. A.* 2A :151–18. In the trial below the prosecutor conceded that when the gun was sold to defendant, replicas of antiques were treated administratively as the equivalent of "antique

firearms" within the meaning of the statute. The State now contends that this concession, favorable to defendant, was erroneous and seeks to preserve this point because of the appeal in *Service Armament Co. v. Hyland, supra,* pending in our Supreme Court. Our disposition bypasses this issue entirely.

 The statutory exemption of *N. J. S. A.* 2A:151–18 applies to antique firearms "which are incapable of being fired * * * *or* which do not fire fixed ammunition, *or* * * * [were] manufactured before 1898 for which cartridge ammunition is not commercially available, *and* are possessed as curiosities or ornaments or for their historical significance or value." (Emphasis added.) We read the word "and" in its usual conjunctive sense, especially in the context where several phrases modifying "antique firearms" are set off by the word "or" used disjunctively. Thus, to be exempt from permit requirements the antique firearm must be of a qualifying type *and* must be possessed as a curiosity, ornament or for historical value. *Cf. State v. Green,* 62 *N. J.* 547, 560 (1973). The trial judge followed this plain interpretation in charging the jury.

 On appeal defendant contends only that the statutory definition of the exemption is so vague and uncertain as to constitute a denial of due process. In support defendant cites *Jordan v. DeGeorge,* 341 *U. S.* 223, 71 *S. Ct.* 703, 95 *L. Ed.* 886 (1951), for the principle that a statute will be deemed "void for vagueness" if it does not adequately forewarn the public of the conduct that will be considered criminal. See *Papachristou v. Jacksonville,* 405 *U. S.* 156, 92 *S. Ct.* 839, 31 *L. Ed.* 2d 110 (1972); *United States v. Harriss,* 347 *U. S.* 612, 74 *S. Ct.* 808, 98 *L. Ed.* 989 (1954); *Lanzetta v. New Jersey,* 306 *U. S.* 451, 59 *S. Ct.* 618, 83 *L. Ed.* 888 (1939); *State v. Lair,* 62 *N. J.* 388, 393 (1973). The contention here is that the qualifying language, "as curiosities or ornaments or for their historical significance or value," is too vague a standard, especially where the firearm may

be possessed for dual purposes. We find this argument unpersuasive.

Absent a contrary statutory signal, words and phrases used by the Legislature are accorded their ordinary, "generally accepted meaning." *N. J. S. A.* 1:1–1; *Fahey v. Jersey City,* 52 *N. J.* 103, 107 (1968); *State v. Joas,* 34 *N. J.* 179, 187 (1961). Resort to a dictionary is not necessary to understand that the possession of a gun for purposes other than as a curiosity (something that arouses interest), or ornament (something that decorates) or for historical interest (concern) or value (worth), falls outside the statutory exemption. Moreover, the other phrases qualifying an exempt firearm, especially the phrase "which are incapable of being fired," make clear the legislative intent to exclude from regulation ancient firearms kept for purposes that minimize the inherent risk of harm.

Phrases subject to greater diversity in interpretation have been upheld against constitutional challenge. *State v. Norflett,* 67 *N. J.* 268, 283–285 (1975), and *State v. Moretti,* 52 *N. J.* 182 (1968), *cert.* den. 393 *U. S.* 952, 89 *S. Ct.* 376, 21 L. Ed. 2d 363 (1968), upheld "without lawful justification" as a test for an illegal abortion; *State v. Lair, supra,* 62 *N. J.* at 394–395, upheld the prohibition of "[s]odomy, or the infamous crime against nature" contained in *N. J. S. A.* 2A:143–1; and *State v. Joas, supra,* 34 *N. J.* at 187, upheld the careless driving statute which forbids driving "carelessly or without due caution * * * as to * * * be likely to endanger, a person or property."

In the case at hand the only evidence bearing on defendant's purpose in possessing the gun was that he wore it exposed in a holster, fully loaded, that he had come from work at a gas station and that he said he carried it "for protection." While carrying it in a hip holster may excite some curiosity, the jury was free to find that this was not his sole purpose; rather, it was as he stated it to be, for protection. In these circumstances defendant cannot justifiably contend

that a layman would be misled by the vagueness of the words "curiosity," "ornament" or "historical value," into believing that carrying such a weapon for protection would keep him within the sanctuary established by the Legislature. As stated in *United States v. National Dairy Products Corp.*, 372 *U. S.* 29, 83 *S. Ct.* 594, 9 *L. Ed.* 2d 561 (1963) :

In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. [372 *U. S.* at 33, 83 *S. Ct.* at 598, 9 *L. Ed.* 2d at 565–566]

See *State v. Norflett, supra,* 67 *N. J.* at 285. We hold that the statute gives ample warning of the conduct prohibited.

The conviction is affirmed.