THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* WALLACE WILSON *et al.*,
Defendants-Appellants.

First District (4th Division)   No. 61449

Opinion filed December 1, 1976.

Wendy Meltzer and Thomas F. Geraghty, both of Northwestern Legal Assistance Clinic, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

After a joint bench trial in the Circuit Court of Cook County the defendants, Wallace Wilson and Kim Kimberley, were convicted of violating section 192—8 of the Municipal Code of the City of Chicago, which prohibits a person from wearing clothing of the opposite sex with the intent to conceal his or her sex. Each defendant was fined $100.

The issues for review are whether section 192—8 is a proper exercise of police powers, whether it denies persons the equal protection of the laws, and whether the ordinance is unconstitutionally overbroad and vague.

On February 17, 1974, at about 11:45 a.m. police officers Davilo and LoBue noticed the defendants, who were wearing female clothing and makeup, sitting next to a window in a restaurant. The officers waited about five minutes for the defendants to come out and approached them as they walked along Randolph Street in the City of Chicago. Officer LoBue testified he believed both were females, but while on duty on February 15, 1974, Officer Davilo had seen Kim Kimberley in a bar and knew him to be a male.

Officer Davilo testified Wallace Wilson was wearing a black, knee-length dress, a fur coat, nylons and dark shoes. Kim Kimberley was wearing a maroon pants suit of the bell bottom type, and both were heavily made up. Officer Davilo asked the defendants whether they were females, and Kim Kimberley stated, "Well, you could say we are, but we are really not." Officer Davilo asked what he meant by that and Kimberley answered, "Yes, we are both males, men."

The defendants were arrested, advised of their rights, and taken to the police station where pictures were taken with their clothes partially on and their genitals and chests exposed. Both were wearing bras and garter belts; both had male genitals, and Wilson had small breasts.

Wallace Wilson testified he was wearing black Palazo pants, which are huge bell bottomed pants, a black top, and coat. He wore a long, black wig and carried a handbag. He stated he was a transsexual, a person who has the mind of a female and the body of a male. He was undergoing psychiatric treatment and would then have a sex change operation. He considered himself to be a female.

Kim Kimberley testified he was wearing black slacks, a black top, a navy blue coat, a shoulder-length wig, and carried a shoulder bag when he was arrested. Upon being questioned by the arresting officers he told

them he was a transsexual who was undergoing a sex change, and he had to wear female clothes for at least a year and a half.

He had talked to Officer Davilo two days before the arrest and knew he was a police officer. At that time he was wearing a two piece dress, a skirt, and a top. He did not deny he was biologically male or hold himself out as a biological female. He stated he had been a transsexual all his life and was currently undergoing treatment in preparation for a sex change. He considered himself to be a male, but he thinks as a woman.

The ordinance complained of, section 192—8 of the Municipal Code of Chicago, is found in the chapter entitled "Public Morals," and it provides as follows:

> "Any person who shall appear in a public place in a state of nudity, or in a dress not belonging to his or her sex, with intent to conceal his or her sex, or in an indecent or lewd dress, or who shall make any indecent exposure of his or her person, shall be fined not less than $20.00 nor more than $500.00 for each offense."

The defendants first contend the ordinance is an improper exercise of police power because it violates fundamental personal liberties without satisfying any proper governmental purpose.

■■ ■ The State (and the governmental entities which derive their powers from it) may enact and enforce legislation designed to preserve and promote the welfare, health, safety, and morals of the public pursuant to its police powers (*California v. La Rue* (1972), 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390; *Mugler v. Kansas* (1887), 123 U.S. 623, 31 L. Ed. 205; *The License Cases* (1847), 46 U.S. 504, 12 L. Ed. 256), and the court may interfere with legislation enacted pursuant to the police powers only to the extent the Constitution so requires. (*Poe v. Ullman* (1961), 367 U.S. 497, 6 L. Ed. 2d 989, 81 S. Ct. 1752.) The due process clause of the Fourteenth Amendment establishes a sphere of personal liberty for every individual subject to reasonable intrusion by the State in furtherance of legitimate State interests (*Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d, 86 S. Ct. 1826), and requires that the challenged law rationally relate to some aspect of the public welfare: the law must achieve its objective, and the objective must be within the scope of the public welfare.

When the legislation is designed to promote the public morality, as in the instant case, the problem of applying the standards of due process is made more difficult because the principles are not subject to objective evaluation. In this situation the moral practices regulated by the statute must be objectively related to the public welfare, or the regulation must conform to the predominant view of morality in the community.

In *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, the court indicated that where certain "fundamental rights" are involved, the

regulation limiting those rights may be justified only by a "compelling state interest," and legislative enactments must be narrowly drawn to express only the legitimate State interests at stake. Nevertheless, in *Roe* and in *Doe v. Bolton* (1973), 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739, the court held that even a fundamental liberty may be qualified by the State for substantive reasons.

■■ It is well established that the function of a reviewing court in determining the constitutionality of an ordinance is a narrow one. The court need not decide whether the ordinance is based on matters which have been scientifically substantiated, but it need only inquire whether the State action so subverts the fundamental liberties implicit in the due process clause that it cannot be sustained as a rational exercise of power. *Alberts v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304.

In this case the defendants assert the right to dress as one pleases is a fundamental personal liberty which is protected by the Ninth Amendment, the due process clause of the Fourteenth Amendment, and the privacy penumbra of the Bill of Rights. They also contend the right to dress as one pleases is a right of personal expression protected by the First and Fourteenth Amendments. It is not clear whether personal appearance is the basis for a "liberty" interest within the Fourteenth Amendment (*Kelley v. Johnson* (1976), ___ U.S. ___, 47 L. Ed. 2d 708, 96 S. Ct. 1440), but the language of the ordinance suggests it was enacted not to regulate the manner in which one may dress. Rather, it appears to prohibit conduct of a homosexual nature which is offensive to the general populace. In light of the case of *Doe v. Commonwealth's Attorney* (1975), 18 Cr. L. 2167, 44 L.W. 2230, *aff'd* (1976), 44 U.S. L.W. 3543, we do not believe that such conduct is a fundamental right protected by the Fourteenth Amendment. In that case the plaintiffs sought declaratory and injunctive relief against the enforcement of Virginia's sodomy statute as applied to consenting adult homosexual males. They argued, similarly to the defendants here, the statute violated their Fifth and Fourteenth Amendment rights of due process, their First Amendment right of freedom of expression, and their First and Ninth Amendment rights to privacy. The opinion of the three-judge panel stated in part:

> "No judgment is made upon the wisdom or policy of the statute. It is simply that we cannot say that the statute offends the Bill of Rights or any other of the Amendments and the wisdom or policy is a matter for the State's resolve." (44 L.W. at 2230.)

The court further indicated the State was not required to show that moral delinquency actually results from homosexuality: "It is enough for upholding the legislation to establish that the conduct is likely to end in a contribution to moral delinquency." In affirming the judgment the United

States Supreme Court stated the statute is constitutional both on its face and as applied to private consensual acts of homosexuals. Thus, despite the line of cases enlarging the scope of personal "liberties" which began with *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678, and has been extended in *Eisenstadt v. Baird* (1972), 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029, and *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, the United States Supreme Court has not recognized any "liberty" interest in alternative sexual orientations.

If a State may prohibit homosexual activity between consenting adults in private, it is clear that it may also prohibit the offensive display of homosexual conduct in public. In the instant case the Chicago City Council apparently believed the appearance in public of members of one sex pretending to be members of the opposite sex would have a detrimental effect on the morals of the community. A similar rationale was upheld in the case of *Alberts v. State of Cal.* (1957), 354 U.S. 476, 502, 1 L. Ed. 2d 1498, 1516, wherein the court stated: "The State can reasonably draw the inference that over a long period of time the indiscriminate dissemination of [obscene] materials, the essential character of which is to degrade sex, will have an eroding effect on moral standards."

■■ Although we, too, do not comment on the wisdom of the ordinance, we believe it reflects the values of the community, is based on a proper purpose, and is reasonably drawn to effectuate that purpose. It is also important to take note of the safety implications of the ordinance. Allowing a disguising of the sexes would hinder the detection of crime, would render uncertain the traditional separation of the sexes in public facilities, and would allow males to more easily victimize females, particularly in public ladies' facilities where vulnerability to attack is already too great.

The defendants testified they are transsexuals who are required to adopt female dress in preparation for sex-change operations, but their appearance in public dressed as females in an attempt to hide their true sex has, nevertheless, the same negative effect on the public morality and safety which has been prohibited by the Chicago City Council. Should the council wish to create an exception in the ordinance based on the hardship alleged by the defendants, it may do so but it is not within our authority to judicially create such an exception.

The contention of the defendants that dressing as females is a form of expression protected by the First and Fourteenth Amendments is not well taken. In the case of *United States v. O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673, the court held that the right of free speech does not justify the performance of an act which has been reasonably prohibited on independent substantive grounds. The court stated:

"We cannot accept the view that an apparently limitless variety

of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." 391 U.S. 367, 376, 20 L. Ed. 2d 672, 679.

The First Amendment protects the opportunity to persuade to action, whether that action be unwise or immoral (*Brandenburg v. Ohio* (1969), 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827; *Edwards v. South Carolina* (1963), 372 U.S. 229, 9 L. Ed. 2d 697, 83 S. Ct. 680), but it does not protect conduct. In this case there was no evidence the defendants intended their actions to have symbolic content, and in fact, they testified they were dressing to please themselves.

The defendants next contend the ordinance is unconstitutionally vague and overbroad because it fails to give fair notice or warning of the acts which it proscribes. They suggest the wearing of unisex fashions, Halloween costumes, costumes by stage actors, and kilts by Scotsmen all might be violations of the ordinance. In *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839, the court set forth the following standard: An ordinance is void for vagueness when it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.' *United States v. Harriss*, 347 U.S. 612, 617, and because it encourages arbitrary and erratic arrests and convictions. *Thornhill v. Alabama* 310 U.S. 88; *Herndon v. Lowry* 301 U.S. 242." A review of the ordinance reassures us that the language is explicit, and we believe a person of common intelligence and experience could easily ascertain what conduct is prohibited. Neither the existence of unisex fashions nor the other examples suggested by the defendants pose any serious difficulty of vagueness or arbitrariness because of the effect of the specific intent requirement: "with intent to conceal his or her sex." In the case of *Screws v. United States* (1945), 325 U.S. 91, 89 L. Ed. 1495, the court stated: "But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." (Also see *Smith v. Goguen* (1974), 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242.) The case relied on by the defendants, *City of Columbus v. Rogers* (1975), 41 Ohio St. 2d 161, 324 N.E.2d 563, is not in point here because the ordinance found to be unconstitutional in that case did not require an intent to conceal his or her sex.

Furthermore, a statute will not be invalidated as being vague because of the difficulty in determining whether certain marginal offenses fall within its language. *United States v. National Dairy Products Corp.* (1963), 372 U.S. 29, 9 L. Ed. 2d 561, 83 S. Ct. 594; *United States v. Petrillo* (1946), 332 U.S. 1, 91 L. Ed. 1877; *City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461.

■■ Finally, the defendants argue the ordinance is unconstitutional

because it denies persons the equal protection of the laws. They concede the ordinance does not discriminate against men or women, but they argue it utilizes a sex-based classification and the City of Chicago has no legitimate interest in keeping persons of the opposite sex distinguishable. It is apparent there has been no arbitrary, sex-based classification created; the classification which is the subject of this action is gender itself. It is also apparent, as discussed above, that the State does have an interest in maintaining the integrity of the sexes, and because the United States Supreme Court has not recognized any "liberty" interest in alternative sexual orientations we may not entertain equal protection arguments based on any but the two traditional sexual classifications.

For the foregoing reasons, both judgments are affirmed.

Affirmed.

JOHNSON, P. J., and SULLIVAN, J., concur.