**Anthony J. McKNIGHT, Appellant,**

v.

**Kathlyn R. SCOTT, Appellee.**

**No. 93–FM–1605.**

District of Columbia Court of Appeals.

Submitted April 26, 1995.

Decided Oct. 12, 1995.

---

Anthony J. McKnight filed a brief pro se.

Kathlyn R. Scott pro se.

Before WAGNER, Chief Judge, and KING, Associate Judge, and MACK, Senior Judge.

MACK, Senior Judge:

On September 30, 1993, the appellee, Kathlyn R. Scott, filed a petition for a civil protection order against her ex-fiance, appellant Anthony J. McKnight. Ms. Scott alleged that appellant threatened her by phone and mail, vandalized her car, faxed and phoned her at work, and physically assaulted her. On October 27, 1993, the trial court issued a temporary civil protection order (TCPO). The court extended the TCPO on November 2, 1993, and on November 16, 1993. After a hearing on November 30, 1993, the trial court granted a permanent civil protection order (CPO) against the appellant. The court ordered that for a period of twelve months, appellant shall: (1) not molest, assault, threaten or physically abuse the appellee; (2) stay away from the appellee's home, person and workplace; (3) have no contact at all with appellee; (4) not fax messages to her job; and (5) stay away from appellee's car. On appeal, appellant claims that (1) the trial court did not have subject matter jurisdiction; (2) the trial court did not have personal jurisdiction; (3) the statute governing intrafamily offenses is unconstitutionally vague

and void for overbreadth; and (4) the trial court erred in issuing the CPO.[1]

### I.

■ Appellant claims that the trial court lacked subject matter jurisdiction over Ms. Scott's petition because appellant's conduct did not constitute an "intrafamily offense" pursuant to D.C.Code § 16–1001(5)(A) (1989 Repl. & 1994 Supp.). An intrafamily offense is defined as:

[A]n act punishable as a criminal offense committed by an offender upon a person: (A) to whom the offender is related by blood, legal custody, marriage, having a child in common, or with whom the offender shares or has shared, a mutual residence; and (B) with whom the offender maintains or maintained an intimate relationship rendering the application of this chapter appropriate.

D.C.Code § 16–1001(5) (1994 Supp.). The evidence at the hearing established that appellant and Ms. Scott lived in the same house together during their engagement. The trial court found that "that's sufficient to bring that within the statute." With respect to the requirement of an intimate relationship between the parties, the court stated "whether these individuals did or did not maintain an intimate relationship is beside the point because under Subsection A the court does have jurisdiction." It seems from the limited record before us that the court ruled as a matter of law that to constitute an intrafamily offense, it need only find, in this case, the existence of a shared residence described in the last clause of Subsection A. This interpretation, however, is contrary to the wording of the applicable statute because the requirements of both Subsection A and B must be established. Thus the trial court erred as a matter of law in holding that only one prong of the two-prong test must be met to constitute an intrafamily offense. *See Sandoval v. Mendez*, 521 A.2d 1168, 1171 (D.C.1987) (affirming trial court's finding that although the parties shared a mutual residence there was no showing of an intimate relationship and thus no subject matter jurisdiction).

This error, however, will not result in a reversal of the civil protection order because the evidence in the record proves the existence of an intimate relationship.[2] In her petition for a CPO, Ms. Scott alleged that the two had an intimate relationship. Moreover, at the hearing she noted that the two were engaged to be married and shared the same residence. The legislative history states that an intimate relationship exists when the parties "have or have had bonds of a genuinely familial, devoted, or homemaking nature; the substance of the relationship, not its form, being the key." REPORT OF THE COMMITTEE ON THE JUDICIARY OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, BILL 4–195, PROCEEDINGS REGARDING INTRAFAMILY OFFENSES AMENDMENT ACT OF 1982 (May 12, 1982) at 9. A couple engaged to be married clearly falls within this definition. Having satisfied the test for an intrafamily offense, we find that the trial court did have subject matter jurisdiction over the dispute.[3]

### II.

■ Moreover, we find that appellant was properly served by Ms. Scott, and the trial court had personal jurisdiction over him. *See* D.C.Code § 16–1004(c) (1989 Repl.); Super.Ct.Intra–Fam.R. 3. Appellant conceded at the hearing that he was served with papers on November 23, 1993, but he claims

---

1. We consider it appropriate to entertain this appeal even though the CPO expired on November 30, 1994. Appellant made a motion to expedite his appeal on July 6, 1994, which this court denied. Subsequently, the case was not placed on the court's calendar until April 26, 1995, five months after the CPO expired. Pursuant to our holding in *Cloutterbuck v. Cloutterbuck*, 556 A.2d 1082, 1083 n. 1 (D.C.1989), we will not dismiss the appeal as moot.

2. Appellant argues that the court prevented him from questioning Ms. Scott about their financial and living arrangements while they shared an apartment. Appellant failed to include the transcript of this objection in the record, and thus we are unable to find any error. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982).

3. We reject appellant's contention that in order to have an intimate relationship, the parties must have a common law marriage. This is inconsistent with the legislative history cited above.

that the service was technically deficient because he did not receive anything labeled "Notice of Hearing And Order Directing Appearance." [4] The trial court found the service of process sufficient mainly because appellant admitted that he was served with the TCPO, petitioner's affidavit, and the petition for a permanent civil protection order, and because he was present at the hearing. Although this court has held that actual knowledge of the existence of a lawsuit is not a substitute for personal service, we agree with the trial court that the service of process was sufficient in this case. *See Parker v. Frank Emmet Real Estate,* 451 A.2d 62, 66 (D.C. 1982). The petition and affidavit for a civil protection order served on appellant stated that "the Petitioner asks the court that a hearing be set on this matter and that a Notice of Hearing and Order to Appear be issued to the Respondent." Clearly, the respondent had notice that a hearing was to take place and that he should appear, regardless of the fact that he may not have received a document titled "Notice of Hearing and Order Directing Appearance." The purpose of service of process is to ensure that all parties have notice of a legal proceeding. We find that the process served on appellant provided sufficient notice to appellant of the pending CPO proceeding against him.[5]

### III.

■ Appellant challenges the CPO on the ground that the statute defining "intrafamily offense" is unconstitutionally vague because it does not adequately define the phrases "maintained or maintains an intimate relationship" and "shares or has shared a mutual residence." This court has noted

that "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that *his contemplated conduct* is proscribed." *German v. United States,* 525 A.2d 596, 605 (D.C.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987) (citing *United States v. National Dairy Products,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963) (emphasis supplied)). Moreover, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *German, supra* at 605 (citing *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)). The statute clearly proscribes criminal conduct by one party against another when both parties share or shared a residence and are involved in an intimate relationship. The legislative history refers to an intimate relationship as a nurturing, familial relationship rather than a sexual relationship or a common law arrangement. *See* REPORT OF THE COMMITTEE ON THE JUDICIARY, *supra.* Appellant and Ms. Scott's relationship clearly falls within the definition of intrafamily offense, and we do not find that the statute is unconstitutionally vague.

■ Appellant also argues that the statute is void for overbreadth because it extends to people not in an intrafamily relationship, thus infringing on their right of association. Because the intrafamily offense statute does not implicate First Amendment concerns, *see infra,* note 6, appellant does not have standing to assert the rights and interests of third parties who might be affected by the statute. *German, supra,* 525 A.2d at 605.[6]

4. The counsel for the appellee responded that "we served [appellant] with what we received from the Court pursuant to this type of matter ... we would have served [additional information] had we been handed that. We received a sealed envelope to serve [appellant]."

5. Appellant argues for the first time on appeal that Ms. Scott failed to issue a subpoena directing him to appear at the hearing pursuant to D.C.Code § 16–1004(c), and we will not address the issue on appeal. *See President & Directors of Georgetown College v. Diavatis,* 470 A.2d 1248, 1251 (D.C.1983).

6. Appellant argues that the CPO infringes on his rights under the First, Fifth, and Sixth Amendments. He claims because he cannot contact Ms. Scott, he is unable to seek redress in court, serve her with process, or represent himself in a suit against her. None of these arguments has any merit in light of the fact that appellant can contact Ms. Scott through her attorney as permitted by the trial court and appellant is not prevented from suing her in court. We also reject appellant's argument that the court denied him the freedom of association by "ordering" him to turn away and leave if he sees Ms. Scott in a nightclub. The court did not include such a provision in its written order. The order requires appellant to stay away from appellee. In

## IV.

 Finally, we find no abuse of discretion in the trial court's granting of the permanent civil protection order. *See* D.C.Code § 16–1005(c) (1989 Repl.); *Maldonado v. Maldonado,* 631 A.2d 40, 42 (D.C.1993). Ms. Scott presented evidence that appellant assaulted her, made false statements about her to her employer, telephoned her at home, and left fax messages at her work. Appellant fails to cite to any evidence in the record to show an error by the trial court, and we find no abuse of discretion.[7]

*Affirmed.*

---

explaining the order to petitioner, the trial court gave the nightclub example. Finally, appellant has not been deprived of his Fifth Amendment right to procedural due process.

**7.** Appellant also challenges the issuance and extension of the temporary civil protection orders on October 27, November 2, and November 14, 1993. Notwithstanding the question of mootness and whether a TCPO is appealable under Super.Ct.Intra–Fam.R. 13, we find no abuse of discretion by the trial court.