**UNITED STATES of America, Plaintiff,**

v.

**Oscar LEE, Jr., Carrie Rene Gaudreau, and Conrad Paul Gaudreau, a/k/a Joseph Gaudreau, Defendants.**

**Crim. A. No. 87–CR–41.**

United States District Court, D. Colorado.

Aug. 27, 1987.

Gerald Rafferty, Bruce Black, Asst. U.S. Attys., Denver, Colo., for the government.

Walter Gerash, Denver, Colo., for defendant, Oscar Lee, Jr.

Charles Szekely, Asst. Federal Public Defender, Denver, Colo., for defendant, Carrie Rene Gaudreau.

Jeffrey S. English, Lakewood, Colo., for defendant, Conrad Paul Gaudreau.

## MEMORANDUM OPINION AND ORDERS

MATSCH, District Judge.

The defendants are confronted with a thirty-eight count superseding indictment ("indictment"). Count One charges that Oscar Lee, Jr. (Lee) participated in the conduct of the affairs of the Public Service Company of Colorado ("PSC") through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Count Two charges all of the defendants and others with conspiracy to violate 18 U.S.C. § 1962(c) in violation of section 1962(d) for which forfeiture is sought under section 1963(a). Counts Three through Eleven charge Lee with mail fraud in violation of 18 U.S.C. § 1341; Counts Twelve through Sixteen charge Lee and Carrie Gaudreau with mail fraud in violation of 18 U.S.C. §§ 1341 and 2; Counts Seventeen through Twenty-One charge Lee with mail fraud in violation of 18 U.S.C. § 1341; and Counts Twenty-Two through Thirty charge all three defendants with mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Counts Thirty-One through Thirty-Five allege that Lee engaged in tax fraud in violation of 26 U.S.C. § 7206(1). Count Thirty-Four also charges Carrie Gaudreau with aiding and abetting Lee in filing a fraudulent tax return, and Count Thirty-Five charges Carrie Gaudreau and Conrad Paul Gaudreau (Joseph Gaudreau) with aiding and abetting Lee in filing a false tax return. Carrie Gaudreau is also charged, in Counts Thirty-Six and Thirty-Seven, with filing a fraudulent tax return in violation of 26 U.S.C. § 7206(1). Joseph Gaudreau is charged in Count Thirty-Eight with filing a false tax return in violation of 26 U.S.C. § 7206(1).

Defendants have moved to dismiss several counts of the indictment and this court heard oral argument on these motions on May 28, July 1, and July 16, 1987. Each of the defendants has moved to incorporate some of a co-defendant's motions. For purposes of the motions filed to this date, the court has assumed that each of the motions applies to all of the defendants.

## MOTIONS TO DISMISS THE RICO COUNTS (COUNTS 1 AND 2)

In Count One of the indictment, Lee is alleged to have conducted the affairs of Public Service Company through a pattern of racketeering activity beginning at least as early as 1968 and continuing to the date of the indictment. The introductory paragraphs allege that Lee served as the Executive Assistant to the Vice-President in charge of the Electrical Production Division of PSC from 1969 to 1974; that he was Public Service Manager of the Electrical Production Division from 1974 to 1978; that he was Assistant Vice-President in charge of the Electrical Production Division from 1978 to 1979; and that he was Vice-President in charge of the Electrical Production Division from 1979 to 1986.

Paragraph 24 of the introduction in the indictment alleges as follows:

24. At all times material herein, OS-CAR R. LEE, in his various positions as the Public Service Vice-President, Assistant Vice-President, and Executive Assistant to the Vice-President in charge of the Electrical Production Division was charged with certain authority, responsibilities and duties, which included but were not limited to the following:

a. The authority to approve contracts and expenditures for goods and services purchased for the Electrical Production Division;

b. The responsibility to ensure that all expenditures incurred by him for goods and services provided to the Electrical Production Division, which he reviewed, recommended and approved complied in all respects with Public Service's objectives, policies and procedures, and with prudent business practices; and

c. A duty to his superiors, Public Service, its customers, shareholders and Board of Directors to conduct his personal and professional affairs so as to avoid any direct or apparent conflict with the interests of Public Service, to provide his honest and faithful services, and a duty not to conceal facts known to him which he had reason to believe were material to the conduct of the affairs and business of Public Service.

Paragraph 27 of the introduction in the indictment alleges as follows:

27. At all times material herein, OS-CAR R. LEE, JACK GAHM and CARRIE GAUDREAU, as Public Service officers and employees, were required to conform their conduct to Public Service General Instruction No. 105, which stated in part:

1. POLICY GOVERNING CONFLICTS OF INTEREST

The policy of Public Service Company of Colorado with respect to conflicts of interest requires that directors, officers and all other employees avoid any conflict between their personal interest and the interest of the Company in dealing with suppliers, customers and all other organizations or individuals doing or seeking to do business with the Company or any subsidiary company or affiliate. In furtherance of this policy, the Company requires that competitive bidding be used, wherever practicable, in awarding construction contracts and in the procurement of materials, supplies and equipment with due consideration being given to factors other than price.

The Company requires that every employee acting on behalf of the Company or engaging in an activity which affects the Company shall maintain the highest standards of business ethics, both in fact and appearance, and shall serve the Company with undivided loyalty. In particular, such ethical conduct and loyalty is imperative where the judgment, decision or action of an employee may result in financial benefit or personal gain to himself, his family or associates—or may appear to do so.

2. OUTSIDE BUSINESS ACTIVITIES OR EMPLOYMENT

It is the Company's policy to permit employees to engage in outside business activities so long as the business activity is not conducted on Company time or with Company facilities, does not detract from the employee's effectiveness at work and does not have interests which conflict with those of the Company. Such permission, however, does not include the use of the Company's name or use of the employee's status with the Company to promote the business.

It is the Company's policy to prohibit employees from engaging in outside business activities which do not conform to these standards.

3. USE OF COMPANY INFORMATION

It is expected that employees will not directly or indirectly use for personal gain or reveal information not generally available to the public which comes to them or is available to them because of their employment by the Company.

\* \* \* \* \* \*

### 5. RELATIONSHIP WITH SUPPLIERS

It is expected that all employees in their business and personal relationships with suppliers of goods and services to the Company will maintain cordial but arm's length relationships. At no time should suppliers to the Company be permitted to do favors for employees, make gifts, provide employment, provide entertainment or the like which might create a privileged or favored position for such supplier. This does not preclude the acceptance of an article of small value, such as novelties or trinkets that are in reality more of an advertisement than a gift. Acceptance of an occasional meal or refreshment or entertainment is left to the discretion of the employee so as to avoid discourtesies, but keeping in mind that it may be as improper to accept such favors as to accept a gift of cash.

\* \* \* \* \* \*

### 7. QUESTIONS AND REPORTING OF POSSIBLE CONFLICTS OF INTEREST

Any outside substantial ownership in, employment by, directorship of, or gifts from suppliers should be reported through your supervisor to the managing or executive department head.

There are 342 racketeering acts in four categories alleged in Count One. The first category is identified as follows:

> A. RACKETEERING ACTIVITY RELATING TO FLY ASH HAULING.
>
> Racketeering Acts No. 1 to 173 occurred at various times and locations within the District of Colorado when defendant OSCAR R. LEE, together with Gilbert Martinez and JACK GAHM who are not indicted in Count One, solicited, accepted, and agreed to accept money, directly and indirectly, in the form of checks from Darold R. Tabor, a vendor of services to Public Service, as consideration for knowingly violating and agreeing to violate his (LEE's) duty of fidelity to his superiors, Public Service, its shareholders and customers to which he was

subject by reason of being an employee and officer of Public Service in violation of C.R.S. § 18–5–401; which racketeering acts are more particularly described as follows:

The indictment then lists 173 checks for the benefit of Oscar Lee. Category B is described as follows:

> B. RACKETEERING ACTIVITY RELATING TO SCRUBBER BALLS.
>
> Racketeering Acts No. 174 to 324 occurred at various times and locations within the District of Colorado when defendant OSCAR R. LEE, together with CARRIE GAUDREAU, George Rienks, and J. Michael Zachary who are not indicted in Count One, solicited, accepted, and agreed to accept money, directly and indirectly, in the form of checks and cash from the Puget Sound Trading Company, a vendor of goods and services for Public Service, as consideration for knowingly violating and agreeing to violate his duty of fidelity to Public Service, its shareholders and customers to which he was subject by reason of being an employee and officer of Public Service, in violation of C.R.S. § 18–5–401; which racketeering acts are more particularly described as follows:

Thereafter racketeering acts 174 to 324 are alleged as checks to Oscar R. Lee.

Category C asserts racketeering activity relating to Fort St. Vrain:

> C. RACKETEERING ACTIVITY RELATING TO FORT ST. VRAIN
>
> Racketeering Acts No. 325 to 340 occurred at various times and locations within the District of Colorado when defendant OSCAR R. LEE together with JACK GAHM, CARRIE GAUDREAU, JOSEPH GAUDREAU and J. Michael Zachary who are not indicted in Count One, solicited, accepted and agreed to accept money, directly and indirectly, in the form of cash and checks from Zachary Industries or J. Michael Zachary, a vendor of goods and services for Public Service, as consideration for knowingly violating and agreeing to violate his duty of fidelity to his superiors, Public Service, its shareholders and customers to

which he was subject by reason of being an employee and officer of Public Service in violation of C.R.S. § 18–5–401; which racketeering acts are more particularly described as follows:

Racketeering acts 325 through 340 are listed as payments for the benefit of Oscar Lee.

Category D asserts racketeering activity relating to Boss Records:

### D. RACKETEERING ACTIVITY RELATING TO BOSS RECORDS

Racketeering Acts No. 341 and 342 occurred from in or about July, 1985, to in or about February, 1986, at Denver, Colorado, when OSCAR R. LEE, defendant herein, together with CARRIE GAUDREAU, JOSEPH GAUDREAU and Thomas Satriano who are not indicted in Count One, solicited, accepted and agreed to accept, directly and indirectly an ownership interest for CARRIE GAUDREAU and Rick Lee in Boss Records, a vendor of goods and services for Public Service, as consideration for knowingly violating and agreeing to violate OSCAR R. LEE's duty of fidelity to his superiors, Public Service, its shareholders and customers which he was subject to by reason of being an employee and officer of Public Service in that OSCAR R. LEE reviewed, recommended and approved a consulting contract and payments on said contract to Thomas Satriano, which payments defendant OSCAR R. LEE knew were to be used to finance the initiation of Boss Records in violation of C.R.S. § 18–5–401, which racketeering acts are more particularly described as follows:

Thereafter, two checks are listed.

All of the racketeering activity charged is based on violations of a Colorado statute, C.R.S. § 18–5–401, which reads in its entirety as follows:

18–5–401. Commercial bribery and breach of duty to act disinterestedly. (1) A person commits a class 5 felony if he solicits, accepts, or agrees to accept *any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as:*

(a) *Agent or employee;* or

(b) Trustee, guardian, or other fiduciary; or

(c) Lawyer, physician, accountant, appraiser, or other professional adviser; or

(d) *Officer, director, partner, manager, or other participant in the direction of the affairs of an incorporated or unincorporated association;* or

(e) Duly elected or appointed representative or trustee of a labor organization or employee welfare trust fund; or

(f) Arbitrator or other purportedly disinterested adjudicator or referee.

(2) A person who holds himself out to the public as being engaged in the business of making disinterested selection, appraisal, or criticism of commodities, property, or services commits a class 5 felony if he knowingly solicits, accepts, or agrees to accept any benefit to alter, modify, or change his selection, appraisal, or criticism.

(3) A person commits a class 5 felony if he confers or offers or agrees to confer any benefit the acceptance of which would be a felony under subsections (1) and (2) of this section.

(emphasis added).

Lee contends that the sections applicable to him as agent or employee under subsection (1)(a), or officer, director, partner, manager or other participant in the direction of the affairs of the company under subsection (1)(d), are unconstitutional because they are so vague that it is not possible to tell what conduct is proscribed. These subsections are challenged as unconstitutional both facially and as applied.

Count Two of the indictment charges that Oscar Lee, Carrie Gaudreau, Joseph Gaudreau and others conspired to conduct PSC's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). That conspiracy, alleged to have begun as early as 1968 and continuing to the date of indictment, is described as follows:

3. It was a part of the conspiracy that from in or about 1968 to in or about the date of this indictment in the District of Colorado, and elsewhere, the defendants

herein did conspire to violate Title 18, United States Code, Section 1962(c) in that the defendants, together with others, including but not limited to Darold R. Tabor, Gilbert Martinez, George Rienks, J. Michael Zachary, and Thomas Satriano, would and did commit, would and did agree to commit, and would and did agree to the commission of Racketeering Acts No. 1 to 342 in violation of C.R.S. 18–5–401, which are set forth in Count One and which are realleged and incorporated as though fully set forth.

The introductory paragraphs in the indictment allege that Carrie Gaudreau was a secretary to the Vice-President in charge of the Electrical Production Division from 1983 to 1984; that she was Administrative Assistant to that vice-president from 1984 to 1985, and that she was Production Service Coordinator from 1985 to 1986. The introduction also alleges that Joseph Gaudreau was the Manager of the Denver Office of Zachary Industries from 1985 to 1986. Zachary Industries is alleged to have been a vendor to Public Service Company. Carrie Gaudreau and Joseph Gaudreau also challenge these subsections of the state statute as unconstitutionally vague, both facially and as applied.

■ The Due Process clause of the Fourteenth Amendment requires that a penal statute give fair notice to ordinary people as to what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The Supreme Court articulated the policy basis of the void for vagueness doctrine in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

> Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

■ Contrary to the government's argument, a facial challenge for vagueness of a criminal statute does not always require a showing that the statute is vague in all its applications. Criminal statutes have been invalidated even when there could conceivably be a valid application. *See, e.g., Colautti v. Franklin,* 439 U.S. 379, 394–401, 99 S.Ct. 675, 685–88, 58 L.Ed.2d 596 (1979); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The government's reliance on *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), for the proposition that the defendants must show that C.R.S. § 18–5–401 is vague in all its applications is misplaced. In *Flipside,* the Court explained that the standards for evaluating a vagueness claim—(1) whether the law gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) whether the law provides explicit standards for those who apply them, to prevent arbitrary and discriminatory enforcement—could not be applied mechanically and suggested that the degree of vagueness tolerated depends in part on the nature of the statute. The Court stated that:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior more carefully, can be expected to consult relevant legislation in advance of action.... The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recog-

nized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

*Id.* at 498–99, 102 S.Ct. at 1193.

The challenged statute in *Flipside* regulated the sale of drug paraphanelia. After examining the ordinance in light of the above factors, the Court concluded that the statute was not impermissibly vague. The Court noted that the ordinance regulated business activity; that it imposed only civil penalties; and that it contained a scienter requirement. Unlike that ordinance, Colorado's commercial bribery statute establishes a two year penalty for a violation of any duty of fidelity to which a person may be subject in his or her employment. That penalty is magnified when this statute is used as a predicate act for a RICO charge, carrying a possible prison penalty of 20 years, with fines and forfeiture.

*Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), involved the constitutionality of a state statute which read: "Any person not engaged in any lawful occupation, known to be a member of any gang of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime in this or in any other State, is declared to be a gangster ...." *Id.* at 452, 59 S.Ct. at 619. The Court held that the statute was so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, primarily because the word gang was defined only as "consisting of two or more persons." *Id.* at 453, 59 S.Ct. at 619. The Court explained that if a statute is vague on its face, "specification of details of the offense intended to be charged would not serve to validate it. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." *Id.* at 453, 59 S.Ct. at 619 (citations omitted).

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), invalidated a city vagrancy ordinance which provided, in part, that:

"Rogues ... and common night walkers, thieves, ... persons wandering or strolling around from place to place without any lawful purpose or object, ... shall be deemed vagrants ..." The Supreme Court held the ordinance was void for vagueness, both in the sense that it failed to give notice and because it encouraged arbitrary and discriminatory enforcement. The Court noted that the list of crimes specified in the ordinance was "so all-inclusive and generalized" that a person could be convicted for almost any conduct. *Id.* at 166, 92 S.Ct. at 845.

In *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), a state flag misuse statute was declared unconstitutionally vague. The Court held that the phrase "publicly ... treats contemptuously the flag of the United States ..." failed to give persons adequate notice as to what the statute commanded or forbade. The Court stated that "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 575, 94 S.Ct. at 1248. The appellee argued that though the statute may be vague in some of its applications, the defendant's "behavior rendered him a hard-core violator as to whom the statute was not vague, whatever its implications for those engaged in different conduct." *Id.* at 577, 94 S.Ct. at 1249. The Court rejected the argument, holding that the statute did not set an imprecise though comprehensible normative standard, but rather specified no standard at all. "Such a provision simply has *no* core." *Id.* at 578, 94 S.Ct. at 1249.

When a statute is phrased in such general language that its application is controlled by variations in individual sensitivities, it is particularly suspect. In *Coates v. City Of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), the Court held that a statute which made it a crime for "three or more persons to assemble, ... on any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing by ...," was unconstitutionally vague because the statute failed to provide a comprehensible standard by which a

person could gauge his conduct. Obviously, "Conduct that annoys some people does not annoy others." *Id.* at 614, 91 S.Ct. at 1688. The Court acknowledged that the ordinance was broad enough to encompass activity that the city could clearly regulate, however, it explained that the city "can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed." *Id.* at 614, 91 S.Ct. at 1688 (citations omitted).

*Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), invalidated a California statute which required persons wandering or loitering on the streets to provide "credible and reliable" identification and to account for their presence when requested by a police officer under circumstances justifying a police inquiry as set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court concluded that the effect of the statute was to vest virtually complete discretion in a police officer to judge the adequacy of the identification and explanation according to his personal standards. The Court emphasized the importance of at least minimal guidelines to govern those responsible for law enforcement.

■ Each of these cases compels the conclusion that subsections (1)(a) and (1)(d) of C.R.S. § 18–5–401 are void for vagueness since they fail to give fair notice of the prohibited conduct and encourage arbitrary and discriminatory enforcement. The term "duty of fidelity" is dependent upon and obtains meaning from the particular circumstances of a person's employment. The spectrum of positions included ranges from ditch digger to bank president and the conduct made subject to the duty will vary greatly depending upon the activities of the employer and the degree to which it regulates the employees. Like the vagrancy statute in *Papachristou,* therefore, almost any conduct could be prosecuted under the commercial bribery statute, depending upon the predilections of prosecutors and juries, *Smith v. Goguen,* or the individual sensitivities of an employer, *Coates.*

The government suggests that there is a common law definition of the phrase "duty of fidelity" and submitted a proposed jury instruction defining the meaning of that phrase. That instruction reads:

The duty of fidelity as used in § 18–5–401 means that duty owed by an employee to his or her employer to act solely for the benefit of the employer when transacting the affairs of the employer; to not take unfair advantage of his position so as to benefit himself; and, to not act on behalf of a party with an interest adverse to the employer's.

The government then filed supplemental citations to the proposed jury instructions, citing to Colorado's Uniform Fiduciaries Law.

In all its efforts to give meaning to the phrase "duty of fidelity," what the government fails to recognize, is that it is the *statute* and not the indictment, the jury instructions or other statutes which must give fair notice of what conduct is prohibited. In fact, the government's strenuous and repeated efforts to give meaning to the phrase "duty of fidelity" serve to illustrate the very incomprehensibility of the statute. If counsel for the government must seek these other sources for a definition of the duty and is still unable to define the duty with any degree of precision, how can the defendants be said to have fair notice of what the commercial bribery statute proscribes?

The government correctly notes that the judgment of federal courts as to the vagueness of a state statute must be made in light of prior state constructions of the statute. *See, e.g., Wainwright v. Stone,* 414 U.S. 21, 22, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973). The statute must be "read precisely as the highest court of the State has interpreted it." *Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940). The government contends that since the Colorado Supreme Court has defined the phrase "duty of fidelity" to mean "duty of loyalty," the statute is not void on its face. In *People v. Lee,* 717 P.2d 493

(Colo.1986), the court denied a challenge that C.R.S. § 18–5–401 was overbroad by finding that the challengers lacked standing. Additionally, the court refused a contention that the statute improperly delegated legislative authority. The only language in the opinion which may be pertinent here is the court's conclusion that the words "fidelity" and "loyalty" are synonymous. The court did not make any effort to interpret the scope of the statute's reach, and expressly stated that it was not considering the question of vagueness because no cross-appeal was filed. Equating the term "fidelity" with "loyalty" adds nothing to the statute—the dictionary recognizes that these words are synonymous and the use of either leaves the scope of the duty impermissibly vague.

The government suggests that the statute should be examined for vagueness as applied, that is, in light of the defendants' conduct as charged. In *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), the Court held a pricing statute was not void for vagueness simply because it might be difficult to determine whether certain marginal offenses fell within the statute's language. "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Id.* at 33, 83 S.Ct. at 598. The Court stated that it would consider the defendant's vagueness challenge "solely in relation to whether the statute sufficiently warned [the defendant] that selling 'below cost' with predatory intent was within its prohibition of 'unreasonably low prices.'" *Id.* at 33, 83 S.Ct. at 598.

The government argues that acceptance of kickbacks is so clearly prohibited by the commercial bribery statute, that it is ludicrous for the defendants to assert it is inapplicable. More specifically, the government asserts that the defendants' efforts to conceal their activities suggest that the defendants were aware that their conduct was illegal, so that they cannot now claim that the statute is vague. After asserting that the concept of fidelity is one that is well recognized in this country, the government states: "The evidence at trial will clearly show that it was a concept known to the defendant and his co-conspirators because they all took sophisticated and elaborate measures to hide these kickbacks." Government's Consolidated Reply, July 15, 1987, p. 5. The as-applied approach, however, requires the court to look at the statute in light of the conduct *as charged*. *United States v. National Dairy Products Corp*, 372 U.S. at 33, 83 S.Ct. at 598. Counts One and Two of the indictment do not allege that the defendants accepted kickbacks. Rather, they allege that Lee solicited, accepted and agreed to accept money from a vendor "as consideration for violating and agreeing to violate his (Lee's) duty of fidelity ..."

The indictment charges that Lee and Carrie Gaudreau were required to conform their conduct to Public Service General Instruction 105 ("Instruction"). The Instruction requires that employees shall "maintain the highest standards of business ethics, both in fact and appearance, ..." At the July 16, 1987 hearing the government indicated that the Instruction was included in the indictment for the purpose of showing that the defendants had knowledge of their duty. The government has emphatically stated that it "is in no way attempting to use the violation of General Instruction No. 105 as a predicate act under RICO." However, the government must make reference to the Instruction to show the nature and scope of the defendants' duty. "The highest standard of business ethics" as required by the Instruction is as vague as the term "duty of fidelity." This confusion and vagueness is compounded by the fact that the vague terms affect each other: one's "duty of fidelity" includes a duty to maintain the "highest standards of business ethics, in both fact and appearance."

Colorado's statute makes it a crime to accept any benefit for knowingly violating or agreeing to violate a duty of fidelity to which the defendant is subject as a person in one of the categories set forth in subsections (1)(a) through (f). The charging language in the indictment states that Lee accepted money in exchange for knowingly violating the duties of fidelity to his superiors, Public Service, its shareholders and customers to which he was subject by rea-

son of being an employee and officer of Public Service Company. The charging language of Count One does not explicate the scope of any of these four duties. Moreover, Lee held four different positions during the time of the alleged racketeering activity; and, presumably, he had different duties and responsibilities in each of those positions.

The combination of duties alleged in the indictment and as permitted by the statute may create conflicting responsibilities. Thus, Instruction No. 105 prohibits employees from revealing information not generally available to the public; whereas, a duty of an officer or employee of this public utility to its customers may require the disclosure of information if the company or its officials are acting against the interests of customers. For example, an officer may have a duty to reveal that other officers have been inflating cost figures to increase rates.

■ The difficulty with this statute, both on its face and as applied, can be highlighted by contrasting it with other bribery statutes. For example, 18 U.S.C. § 201 defines bribery of public officials in terms which include the intent to influence any act or the violation of an official duty and to do so corruptly. Officials are prohibited from accepting or agreeing to accept anything of value in return for being influenced in the performance of official acts, violating an official duty or committing any fraud on the United States. While these are general terms, they are far more specific than the violation of any duty of fidelity to which one may be subject in his or her employment. A public official's duty is defined by the office held. That is also true of parts of Colorado's commercial bribery statute. Thus, there is no problem of vagueness in the statute's penalizing a violation of a well recognized duty of fidelity as a trustee, lawyer or accountant. But when the statute is used to charge a violation without reference to established duties, or to charge a violation of many duties, it becomes vague. For example, beyond the specific duties of particular persons under the charter and by-laws of their individual corporate employers, there are many areas in which corporate officers are exposed to

liability for breach of obligations imposed by external law such as state and federal securities statutes and established principles of common law. The incorporation of this vast body of law by reference to the role of corporate officer extends the reach of the challenged statute beyond the vision of any reasonably intelligent person.

The doctrine of void for vagueness is related to the problem presented by a duplicitous indictment. The allegations of an indictment form the basis for structuring a trial, including determining the parameters for relevance and materiality in the admission of evidence, giving notice to the accused of what evidence he must meet and, finally, giving the jury direction in deliberations with a focus on particular elements of the crime. Here, we are confronted with a miasmatic fog. As a result of the oral argument, the government has proposed a form of instruction to define the duty of fidelity to the jury. The instruction is, itself, vague. If given in the context of this indictment, jurors are free to determine for themselves what is proscribed according to the jurors' collective sensitivity concerning the propriety of the defendants' conduct during almost a decade of employment in four different positions. That, itself, is a denial of the fundamental fairness protected by the Due Process Clause.

Subsections (1)(a) and (1)(d) of the Colorado commercial bribery statute, C.R.S. § 18–5–401, are void for vagueness, both facially and as applied in this case. Because alleged violations of that statute are the predicate offense for the RICO violations, Counts One and Two of the indictment must be dismissed.

## MOTION TO DISMISS COUNTS 1 AND 2 FOR VIOLATION OF THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION; MOTION TO STRIKE CERTAIN ALLEGED RACKETEERING ACTS SPECIFIED IN COUNT 1 FOR EXPIRATION OF THE STATUTE OF LIMITATIONS; MOTION TO DISMISS COUNT 1 FOR DEFECTIVE STATEMENT OF RICO ALLEGATIONS

In Motion 4, Lee argues that Counts One and Two should be dismissed on the ground

that they violate the ex post facto clause of the United States Constitution. In Motion 5, Lee argues that the court should strike certain racketeering acts specified in Count One of the indictment as they are non-chargeable under the state statute of limitations. In Motion 6, Lee asserts that Count 1 should be dismissed because the indictment does not allege that the defendant's acts in any way benefitted Public Service Company. Because this court has determined that the RICO counts should be dismissed, the issues raised by these motions need not be decided.

## MOTION TO STRIKE FORFEITURE ALLEGATIONS FOLLOWING COUNT 2

■ The forfeiture allegation in Count Two must, of course, fall with the dismissal of that count because of the unconstitutionality of the statute upon which the predicate offenses are based. Yet, there is an additional basis for striking the claim for forfeiture. The indictment does not describe any real or personal property. The government contends that the principle objective of Rule 7(c)(2) is to provide notice to those facing criminal charges that forfeiture will be sought, and that the indictment provides such notice to these defendants. In support of its position, the government cites *United States v. Grammatikos*, 633 F.2d 1013 (2nd Cir.1980). The court stated that the indictment "indicated that forfeiture would be sought, but no property was specifically identified as being subject, upon conviction, to government seizure, ..." *Id.* at 1019, and "the superseding indictment stated that the government would seek forfeiture of all profits and property subject to that penalty ..." *Id.* at 1024. Prior to trial, the prosecutor supplied defense counsel with a bill of particulars specifying fourteen pieces of property subject to forfeiture. After receiving the general verdict, the court submitted special interrogatories to the jury inquiring which of the defendant's properties were sufficiently intertwined with his drug trafficking as to be subject to forfeiture. The court held that the defendant was afforded the procedural requisites and concluded that:

though pleaded in barebones statutory language, the indictment advised appellant that the government would seek forfeiture of virtually all of his property. Furthermore, the bill of particulars identified each item of property deemed susceptible to seizure and enabled appellant to marshal evidence in defense of them. Plainly he was not prejudiced because those properties were specified in a bill of particulars rather than in the indictment itself. Together with the special verdict, this constitutes full compliance with the procedural rules regarding criminal forfeiture.

*Id.* at 1024–25.

At the hearing on this issue, the government conceded that it could not specify the property subject to forfeiture in a bill of particulars. The court's conclusion in *Grammatikos* depended upon the government giving such notice. Therefore, the procedural requisites for criminal forfeiture have not been met—the failure of the indictment to give notice of the property claimed subject to forfeiture is a denial of the due process protection of the Fifth Amendment and is not in compliance with the requirements of 18 U.S.C. § 1963(a).

■ The government also contends that the identification of particular property may be the subject of a separate hearing if the jury returns a verdict on this count. That procedure would deprive the defendants of the right to jury trial under the Sixth Amendment.

## MOTION TO DISMISS COUNT 2 FOR FAILURE TO PLEAD AN INDICTABLE CONSPIRACY; MOTION TO SEVER COUNTS 1 AND 2 FROM THE NON–RICO ALLEGATIONS; MOTION TO DISMISS COUNTS 3 THROUGH 30 AS MULTIPLICITOUS TO COUNTS 1 AND 2

Lee argues, in Motion 8, that the conspiracy count is defective because it merely identifies several distinct and unrelated transactions, rather than alleging a single unified conspiracy. In Motion 9, Lee requests that the RICO counts be severed

from the non-RICO counts. Finally, in Motion 10, Lee asserts that the mail fraud counts are multiplicitous to the RICO counts. Again, because this court has determined that Counts One and Two should be dismissed, Lee's Motions 8, 9 and 10 are now moot.

## MOTION TO STRIKE MAIL FRAUD ALLEGATIONS BARRED BY THE STATUTE OF LIMITATIONS

In Motion 11, Lee claims that certain mail fraud allegations in the indictment should be stricken since they allege events occurring outside the five year statute of limitations.

In a mail fraud prosecution, the statute of limitations begins to run from the date of mailing: a prosecution is timely where the mailing occurred within a five year period notwithstanding that the defendant's actions concerning the scheme to defraud occurred before the statutory period. *United States v. Reed,* 658 F.2d 1225, 1240 (7th Cir.1981). The earliest *mailing* alleged in the indictment is within the five year statutory period. As to facts alleged in the indictment that fall outside the statutory period, the government correctly notes that proof of transactions and events occurring outside the statutory period may be relevant and may be admissible to show the existence of a scheme to defraud. *United States v. Blosser,* 440 F.2d 697, 699 (10th Cir.1971). The court will determine at trial whether certain of the allegations should be stricken before the jury receives a copy of the indictment. Accordingly, Lee's Motion # 11 is denied.

## CARRIE GAUDREAU'S MOTION TO DISMISS MAIL FRAUD COUNTS

The defendant argues that the mail fraud counts should be dismissed because "Nowhere in the indictment does it say or allege facts which show that the Public Service Company was somehow defrauded in the amounts of money allegedly involved in the instant indictment." Moreover, there are no allegations that Public Service Company was entitled to any of the amounts allegedly received by the defend-ants. "In other words, the allegations are insufficient to show that the goods and services were not quid pro quo." The defendant concludes that the indictment describes conduct prohibited by state law—not conduct which is prohibted by the mail fraud statute.

Subsequent to the filing of this motion, the Supreme Court decided *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a case involving the scope of conduct prohibited by 18 U.S.C. § 1341. Each of the defendants then filed additional briefs on this issue contending that the indictment was not sufficient after the *McNally* decision. The government responded with a memorandum brief arguing that *McNally* does not require the dismissal of the mail fraud counts.

Based upon an examination of legislative history, the Supreme Court held in *McNally* that the mail fraud statute does not proscribe schemes to defraud citizens of their intangible rights to honest and impartial government; the mail fraud statute only penalizes fraudulent schemes intended to deprive people of their money or their property. As the Court stated, "we read § 1341 as limited in scope to the protection of property rights." *Id.* at ——, 107 S.Ct. at 2881. The mail fraud count in the *McNally* indictment alleged that the defendants "had devised a scheme (1) to defraud the citizens and the government of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and (2) to obtain, directly and indirectly, money and other things of value by means of false pretenses and the concealment of material facts." *Id.* at ——, 107 S.Ct. at 2878. The Court never suggested that the indictment failed to allege all the essential elements of mail fraud. Rather the Court concluded that there was nothing in the jury charge which required the jury to find that the defendants obtained property by means of false pretenses. The Court stated that "there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property. It was not charged that in the

absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance.... Nor was the jury charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent." *Id.* at ——, 107 S.Ct. at 2882.

The mail fraud counts in this indictment allege that the scheme to defraud concerned property rights. Counts Three through Eleven charge that Lee "devised and intended to devise a scheme and artifice to defraud his (LEE's) superiors, Public Service, its customers and shareholders of money, and the right to have the business and affairs of Public Service conducted honestly, impartially, and free from misconduct, fraud and deceit ..." Counts Twelve through Sixteen charge Lee and Carrie Gaudreau with devising and intending to devise "a scheme and artifice to defraud their superiors, Public Service, its customers and shareholders of money, and the right to have the business and affairs of Public Service conducted honestly, impartially, and free from misconduct, fraud and deceit." Counts Seventeen through Twenty-One apply only to Lee, and reallege and incorporate language from Counts Twelve to Sixteen. Finally, Counts Twenty-Two through Thirty charge Lee, Carrie Gaudreau and Joseph Gaudreau with devising and intending to devise a "scheme and artifice to defraud their supervisors, Public Service, its customers and shareholders of money, and their right to have the business and affairs of Public Service conducted honestly, impartially, and free from misconduct, fraud and deceit." Though the Counts do not allege any specific monetary loss to Public Service Company, there are allegations of kickback payments from vendors of goods and services. The inference is that such goods and services were obtainable from the same or substitute suppliers at lower cost. These are sufficient allegations that the scheme sought to defraud Public Service Company, its customers and shareholders with respect to money or property. Accordingly, *McNally* does not require dismissal of the mail fraud counts.

Those parts of the indictment relating to the "intangible rights theory," must be stricken under *McNally*. Nonetheless, the indictment alleges all the necessary elements of mail fraud and is sufficient to put the defendants on notice of the charges against them. Striking allegations from an indictment to narrow the scope of the scheme alleged is permitted. In *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the Supreme Court considered whether the Fifth Amendment's grand jury guarantee is violated when a defendant is tried under an indictment that alleges a certain fraudulent scheme but is later convicted based on evidence that supports only a significantly narrower and more limited, though included, fraudulent scheme. At the end of the trial, the government moved to strike part of the indictment. The defendant objected, and the entire indictment was sent to the jury. On appeal, the defendant argued that the proof had fatally varied from the scheme alleged in the indictment. The Court of Appeals vacated the conviction, reasoning that a grand jury's willingness to indict an individual for participation in a broad criminal plan does not establish that the same grand jury would have indicted the individual for participating in a substantially narrower, even if wholly included, criminal plan. The Supreme Court reversed, holding that "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id.* at 136, 105 S.Ct. at 1815. The Court explained that "A part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as 'useless averment' that 'may be ignored' ". *Id.* at 136, 105 S.Ct. at 1815.

The Court also examined *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), a decision which supported the Fifth Circuit Court of Appeals' view that striking parts of an indictment invalidates the whole indictment, because a court cannot speculate

whether the grand jury had intended any remaining offense to stand independently, even if that remaining offense was clearly included in the original text. The Supreme Court concluded that "Modern criminal law has generally accepted that an indictment will support each offense contained within it. To the extent that *Bain* stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it, that case has simply not survived. To avoid further confusion, we now explicitly reject that proposition." *Miller*, 471 U.S. at 144, 105 S.Ct. at 1819.

The defendants' motions to dismiss the mail fraud counts are denied. Allegations in the indictment regarding the right of Public Service Company, its customers and shareholders to have the affairs of Public Service conducted honestly and impartially are stricken. The government will be required to prove that the intent of the alleged scheme was to defraud the defendants superiors, Public Service Company and its customers and shareholders of money.

### GAUDREAU'S MOTION TO DISMISS OR REQUIRE ELECTION ON INCOME TAX VIOLATIONS

Counts Thirty-Four and Thirty-Five charge Carrie Gaudreau with aiding and abetting Oscar Lee in making and filing a materially false income tax return for the years 1985 and 1986, respectively. Counts Thirty-Six and Thirty-Seven charge Ms. Gaudreau with subscribing to a materially false income tax return for herself for the years 1985 and 1986, respectively. Ms. Gaudreau asserts that Count Thirty-Four alleges the same crime as Count Thirty-Six, and that Count Thirty-Five alleges the same crime as Count Thirty-Seven, and that as a result, it is a violation of double jeopardy to prosecute her on all four counts.

The government asserts that it must show different facts to obtain convictions on the aiding and abetting counts (Thirty-Four and Thirty-Five) and the subscribing to a materially false return counts (Thirty-Six and Thirty-Seven). *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), established that:

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one is whether each provision requires proof of a fact which the other does not. "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an aquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Id.* at 304, 52 S.Ct. at 182 (citations omitted).

To obtain convictions on Counts Thirty-Four and Thirty-Five, the government must prove the essential elements of aiding and abetting, including (1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense. *See,* 18 U.S.C. § 2; *United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982). To obtain convictions on Counts Thirty-Six and Thirty-Seven, the government must prove that (1) Carrie Gaudreau made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by Carrie Gaudreau contained a written declaration that it was made under the penalties of perjury; (3) Carrie Gaudreau did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) Carrie Gaudreau falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law. *See,* 26 U.S.C. § 7206(1); *United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir. 1984). Since the government must prove different facts to obtain convictions on the aiding and abetting counts as compared to Counts Thirty-Six and Thirty-Seven, the indictment does not offend the rule contained

in *Blockburger*, and does not contain multiplicitous counts. Therefore, Carrie Gaudreau's motion to dismiss the counts alleging income tax violations is denied.

## JOSEPH GAUDREAU'S MOTION TO DISMISS COUNT 2 OF THE INDICTMENT FOR DEFECTIVE STATEMENT OF CONSPIRACY

Joseph Gaudreau contends that Count Two of the indictment alleges separate and distinct conspiracies rather than a "single overall conspiracy," and should therefore be dismissed. The RICO counts are dismissed, and accordingly this motion is moot.

## JOSEPH GAUDREAU'S MOTION TO DISMISS COUNTS 22 THROUGH 30 OF THE INDICTMENT

This motion raises the same issues discussed in connection with Carrie Gaudreau's motion to dismiss the mail fraud counts. *McNally* does not require dismissal of these counts, and accordingly, this motion is denied.

## JOSEPH GAUDREAU'S MOTION TO DISMISS COUNT 35 OF THE INDICTMENT

The defendant argues that Count Thirty-Five should be dismissed because the indictment fails to allege how Gaudreau aided Lee in filing a materially false return. This motion is without merit, and is therefore denied.

## JOSEPH GAUDREAU'S MOTION TO DISMISS COUNT 38 OF THE INDICTMENT

The defendant argues that Count Thirty-Eight does not properly allege that Gaudreau filed a false tax return in violation of 26 U.S.C. § 7206(1) because Gaudreau reported all the income he received during that year.

The indictment alleges all the elements of tax fraud under section 7206. Section 7206 makes it a crime to willfully falsify one's income tax return in any material matter. Generally speaking, a party is prosecuted under section 7206 for understating his income in an effort to reduce his tax liabilities. Here, the government alleges an overstatement of gross income by including amounts received on behalf of Lee and others. The overstatement of income made for the purpose of concealing payments to others is a violation of the statute. Accordingly Count Thirty-Eight will not be dismissed.

## MOTION TO DISMISS FOR NONCOMPLIANCE WITH THE RIGHT TO FINANCIAL PRIVACY ACT

The defendants have moved to suppress financial records obtained from the Denver National Bank pursuant to a subpoena issued by the federal grand jury in this district. These motions are based on the contention that the government violated the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq., ("Act") by failing to comply with the strict procedures mandated by that statute. Section 3417(d) of the Act provides for remedies for violations: "The remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violation of this chapter." This court has previously followed the guidance of *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986), where the court held that the civil remedies set forth in section 3417(d) are the exclusive remedies for a violation of the Act, for "Had Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized." *See, United States v. Mosko*, 654 F.Supp. 402, 406 (D.C.Colo.1987); *United States v. Musson*, 650 F.Supp. 525, 533 (D.C.Colo. 1986). It is this court's view that a violation of the Act does not involve any issue of constitutional proportions. Congress created the requirements contained in the Act and it has the authority to limit the sanctions for its violation.

## MOTION TO DISMISS, OR ALTERNATIVELY, FOR CHANGE OF VENUE

The defendants seek dismissal or change of venue based upon pretrial public-

ity. It is this court's view that the determination of this motion must await the efforts to select a fair and impartial jury at voir dire of the jury panel. The determination of any effect from a government press release must also await the actual experience with questioning of the panel. Accordingly, this motion is reserved.

## MOTION TO DISMISS FOR PROSECUTORIAL ABUSE OF ITS CHARGING AND IMMUNITY DISCRETION

■ The defendants seek dismissal for prosecutorial abuse of the government's charging and immunity discretion. Specifically, the defendants contend that the prosecutors have been influenced by the Public Service Company and its investigator in singling out Mr. Lee, and that the government has been discriminatory in prosecuting the Public Service employess rather than the contractors supplying Public Service Company. None of these contentions supports an inference that the government's prosecutorial discretion was influenced by an unjustifiable standard, such as race, religion, or other arbitrary classification. *United States v. Steele*, 461 F.2d 1148 (9th Cir.1972). Moreover, prosecutorial discretion is an executive branch authority and courts have a very limited role in reviewing the exercise of that discretion.

■ The defendants also contend that the governmental policy of "pocket immunity" is illegal. Pocket immunity has been expressly recognized in *United States v. Anderson*, 778 F.2d 602, 606 (10th Cir. 1985), and other courts have also upheld the use of informal immunity. *See, e.g., United States v. Winter*, 663 F.2d 1120, 1133 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983); *United States v. Librach*, 536 F.2d 1228, 1230 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Accordingly, Lee's Motion 13 is denied.

## MOTION TO DISMISS FOR FAILURE TO PRESENT EXCULPATORY EVIDENCE

The defendants seek dismissal of the indictment on the ground that the prosecution failed to present exculpatory evidence to the grand jury. The matters set forth in Lee's motion as being exculpatory are not sufficient to meet the standard established in *United States v. Page*, 808 F.2d 723, 728 (10th Cir.1987). Accordingly, Lee's Motion 14 is denied.

## MOTION TO DISMISS FOR NONCOMPLIANCE WITH GRAND JURY QUORUM AND ATTENDANCE REQUIREMENTS

The defendants seek dismissal of the indictment for noncompliance with the grand jury quorum and attendance requirements. It is apparent that some records must be examined for the full consideration of this motion, and it is, therefore, reserved until the defendants have an opportunity to inspect records in accordance with this court's order of July 16, 1987.

## MOTION TO DISMISS FOR FAILURE TO PROPERLY INSTRUCT THE GRAND JURY OF THE LAW

The defendants seek dismissal of the indictment for failure to properly instruct the grand jury of the law. They argue that the grand jurors had inadequate knowledge of what conduct is required to commit the indicted offenses, particularly in view of the change in law as a result of the *McNally* decision discussed above. The defendants assert that in light of *McNally* they have demonstrated a particularized need for disclosure of the colloquy between the prosecutors and the grand jury on the subject of the law. This court has determined that the *McNally* decision does not require dismissal of the mail fraud counts, and as a result, the defendants have failed to show any particularized need for disclosure of the colloquy. The defendants have not suggested any other reason to suspect that the grand jury was improperly instructed on the law. Accordingly this motion is denied.

## MOTION TO DISMISS DUE TO PROSECUTORIAL IMPROPRIETY

The defendants argue that the indictment should be dismissed due to prosecutorial impropriety. Assuming the truth of all the matters asserted in the motion, the defendants have failed to raise sufficient

issues of prosecutorial misconduct to cause this court to hold an evidentiary hearing or to exercise its supervisory powers by the extreme remedy of dismissing the indictment. Accordingly, Lee's Motion 17 is denied.

## MOTION TO COMPEL DISCLOSURE OF UNAUTHORIZED PERSONS APPEARING BEFORE THE GRAND JURY

Lee seeks disclosure of information concerning the presence of unauthorized persons appearing before the grand jury. Government's counsel have responded that no special assistant U.S. Attorneys appeared before the grand jury in connection with the investigation; no agents or other government employees appeared before the grand jury other than as witnesses; and no private parties appeared before the grand jury other than as witnesses. At the hearing on these motions on July 1, 1987, defendants' counsel agreed to accept these representations.

## MOTION TO COMPEL THE GOVERNMENT TO AFFIRM OR DENY THE USE OF SUMMARIES OF TESTIMONY OR DOCUMENTS BEFORE THE GRAND JURY

Lee requests that this court compel the government to affirm or deny the use of summaries of testimony or documents before the grand jury. Government counsel, in response to this motion, represented that the government's evidence did not include written summaries of the evidence, and that the testimony of the two summary witnesses who appeared has been transcribed and the transcripts delivered to counsel for the defendants. At the hearing on this motion on July 1, 1987, defendants' counsel accepted that representation and acknowledged receipt of the transcripts.

## MOTION FOR INSPECTION OF JURY QUESTIONNAIRES AND RECORDS IN THE CUSTODY OF THE GRAND JURY CLERK, AND FOR DISCOVERY OF GRAND JURY DEMOGRAPHICS

On July 16, 1987, this court entered an order directing the clerk to make available the information requested by the defendants in this motion.

## CARRIE GAUDREAU'S MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE PRODUCED AS A RESULT THEROF, OF DEFENDANT CARRIE GAUDREAU

Ms. Gaudreau moved to suppress any and all evidence seized as a result of interviews conducted by the Public Service Company occurring sometime during the later part of 1985 and early part of 1986, and any and all documents and evidence produced by the defendant at that time. At the July 1, 1987 hearing, Ms. Gaudreau's counsel indicated there was no evidentiary support for this motion. Accordingly, this motion is withdrawn.

Upon the foregoing, it is

ORDERED, that the defendants' motions to dismiss the RICO counts, Counts One and Two, on the ground that the Colorado commercial bribery statute used as the predicate offense for the RICO charges is unconstitutional, is granted, and it is

FURTHER ORDERED, that the defendants' motions to strike the forfeiture allegations following Count Two are granted, and it is

FURTHER ORDERED, that all other motions directed to Counts One and Two are moot, and it is

FURTHER ORDERED, that Lee's motion to strike the mail fraud allegations as barred by the statute of limitations is denied, and it is

FURTHER ORDERED, the defendants' motions to dismiss the mail fraud counts are denied, but allegations in the indictment regarding the right of Public Service Company, its customers and shareholders to have the affairs of the Public Service Company conducted honestly and impartially are stricken, and it is

FURTHER ORDERED, that the defendants' motions seeking dismissal or election on the income tax violations is denied, and it is

FURTHER ORDERED, Joseph Gaudreau's motions to dismiss Counts Thirty-Five and Thirty-Eight are denied, and it is

FURTHER ORDERED, that the defendants' motions to dismiss for noncompliance with the Right to Financial Privacy Act are denied, and it is

FURTHER ORDERED, that the motion for a change of venue is reserved, and it is

FURTHER ORDERED, that the motion to dismiss for prosecutorial abuse of the government's charging and immunity discretion is denied, and it is

FURTHER ORDERED, that the motion to dismiss for failure to present exculpatory evidence is denied, and it is

FURTHER ORDERED, that the motion for noncompliance with grand jury and quorum requirements is reserved, and it is

FURTHER ORDERED, that the motion for failure to properly instruct the grand jury of the law is denied, and it is

FURTHER ORDERED, that the motion to dismiss due to prosecutorial impropriety is denied, and it is

FURTHER ORDERED, that Ms. Gaudreau's motion to suppress statements and physical evidence has been withdrawn.