**UNITED STATES of America, Plaintiff,**

v.

**Henry ANDREWS, Thomas Bates, Roger Bowman, Jeff Boyd, George Carter, Jackie Clay, Edgar Cooksey, Andrew Craig, Jerome Crowder, Lawrence Crowder, Floyd Davis, William Doyle, Harry Evans, Eddie Franklin, Bernard Green, Charles Green, Henry Leon Harris, Earl Hawkins, Louis Hoover, J.L. Houston, Eugene Hunter, Derrick Kees, Isiah Kitchen, Alan Knox, Sammy Knox, Roland Lewis, Felix Mayes, Melvin Mayes, Walter Pollard, Derrick Porter, Noah Robinson, Michael Sardin, James Speights, Anthony Sumner, Freddie Elwood Sweeney, Melvin Tillman, Edward Williams and Rickie Dean Williams, Defendants.**

**Nos. 89 CR 0908–1, 89 CR 0908–9, 89 CR 0908–26, 89 CR 0908–27, 89 CR 0908–31 and 89 CR 0908–33.**

United States District Court,
N.D. Illinois, E.D.

Oct. 17, 1990.

William Hogan and Ted Poulous, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Gary Ravitz, Chicago, Ill., for Andrews.

Carl Clavelli, Chicago, Ill., for J. Crowder.

Keith Spielfogel, Chicago, Ill., for Lewis.

Ron Clark, Chicago, Ill., for Mayes.

Robert F. Simone, Philadelphia, Pa., for Robinson.

Ron Bredeman, Park Ridge, Ill., for Speights.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On October 27, 1989, the grand jury returned a 175 count indictment against the 38 defendants in this case. Counts One and Two of this indictment allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c) and (d). Six of the defendants, namely Henry Andrews, Jerome Crowder, Roland Lewis, Felix Mayes, Noah Robinson and James Speights, have filed motions to dismiss these Counts arguing that the RICO statute is unconstitutionally vague. For the reasons discussed below, these motions are denied.

## I. FACTS

For the purposes of this motion to dismiss, we will assume the facts alleged in the indictment are true. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). It is not, however, necessary to recite these facts and the charges against each defendant in detail. Instead, it will suffice to briefly summarize the nature of the alleged criminal activities and their scope. According to the indictment, each of the moving defendants was associated with the El Rukns, a purportedly infamous Chicago-based street gang. The El Rukn gang was a highly disciplined and organized association that existed solely for the purpose of perpetrating crime. It existed, in various forms, for 23 years, from 1966 to 1989. During this time, the El Rukns committed uncountable acts of racketeering including 20 murders, 12 attempted murders, 11 conspiracies to murder, one act of kidnapping, wide scale drug trafficking and numerous acts of obstruction of justice. These activities were carried out through a formal chain of command that was headed by Jeff Fort, an unindicted co-conspirator. Five of the moving defendants held positions at the second and third levels of command, referred to as "generals" and "officers" respectively. As such, these defendants "operated and promoted the activities of the enterprise, and exercised authority over subordinate members."

The primary "business interest" of the El Rukns was the distribution of narcotics wherein 37 defendants, including each of the moving defendants, conspired to possess with intent to distribute, and to distribute, multi-kilogram quantities of heroin and cocaine, hundreds of pounds of marijuana, thousands of amphetamine pills, thousands of Talwin and Triplenamin pills, multi-liter quantities of codeine syrup and large quantities of Phencyclidine or PCP. To protect these drug operations from the ambitions of "competitors," the El Rukns found it necessary to murder a slew of rival drug dealers and rival gang members. To protect members from prosecution for some of these murders and other crimes, the El Rukns killed, intimidated, and kidnapped witnesses. Each of the moving defendants is charged with significant participation in these criminal activities.

## II. DISCUSSION

Count One of the indictment charges the defendants with a violation of § 1962(d), which proscribes conspiracies to violate substantive RICO, § 1962(a), (b) or (c). Count Two charges a violation of § 1962(c), which states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

According to 18 U.S.C. 1961(5), " 'a pattern of racketeering activity' requires at least two acts of racketeering activity" within ten years. The defendants focus their vagueness attack on the word "pattern" in the phrase "pattern of racketeering activity."

The Supreme Court recently wrestled with the meaning of this word in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). After recognizing that "Congress has done nothing to ... illuminate RICO's key requirement" and the "plethora of different views expressed by the Courts of Appeals," the Court endeavored to provide some guidance. *Id.* 109 S.Ct. at 2899. It declared "that to prove a pattern of racketeering activity a ... prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 2900 (emphasis in original). Thus, it is "continuity plus relationship" that establishes a "pattern." *Id.* (emphasis removed); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

As to the relatedness requirement, the Court explained that the predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* 109 S.Ct. at 2901. As to the continuity requirement, the Court explained that it can be shown by "proving a series of related predicates extending over a substantial period of time." *Id.* at 2902. This requirement can also be shown by the *threat* of continuity, which, according to the Court, is established "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.*

In support of their motions, the defendants rely primarily on Justice Scalia's concurring opinion in *H.J. Inc.,* in which he expressed grave doubts about the value of the Court's attempt to define "pattern" opining that it "increases rather than removes the vagueness." *Id.* at 2908. He also ominously predicted that RICO's ultimate demise would result from this vagueness stating that, although "[n]o constitutional challenge to this law has been raised in the present case ..., [t]hat the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented." *Id.* at 2909.

■ Accepting this clear invitation, the defendants here raise a constitutional challenge on the grounds of vagueness. In this misdirected attack, the defendants argue that the "pattern" requirement is ambiguous and unclear "on its face." They contend, in essence, that it fails to inform potential and hypothetical transgressors of the precise activities that are proscribed. This attack is misdirected in one crucial respect: vagueness challenges to statutes that do not implicate First Amendment freedoms are examined in light of the particular facts of the case at hand. *New York v. Ferber,* 458 U.S. 747, 767–68, 102 S.Ct. 3348, 3360–61, 73 L.Ed.2d 1113 (1982); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (citing *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963)); *Bradley v. Lane,* 834 F.2d 645, 650 (7th Cir. 1987), *cert. denied,* 486 U.S. 1012, 108 S.Ct. 1746, 100 L.Ed.2d 209 (1988).[1] Thus, be-

---

1. A person may prevail on a challenge to a statute "on its face" where First Amendment concerns are implicated, even if his or her conduct is clearly proscribed, because of the importance and "sensitive nature of protected expression." *Ferber,* 458 U.S. at 768, 102 S.Ct. at 3361. There is a concern that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." *Id.* (quoting *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct.

cause there is no conceivable implication of the First Amendment here, it is irrelevant that RICO may be unconstitutional with respect to theoretical and marginal cases not before the Court. Accordingly, to succeed in a vagueness challenge, each defendant must demonstrate that RICO's "pattern" requirement is vague with respect *his* conduct as it is alleged *here. See Ferber,* 458 U.S. at 767–68, 102 S.Ct. at 3361; *Mazurie,* 419 U.S. at 550, 95 S.Ct. at 714; *Bradley,* 834 F.2d at 650; *see also United States v. Angiulo,* 897 F.2d 1169, 1179 (1st Cir.1990). Unfortunately, none of the defendants has even broached this issue. We will, nevertheless, address the matter.

■ A criminal statute is unconstitutionally vague if it fails to give fair notice to a person of ordinary intelligence that the conduct at issue falls within its prohibitions. *Bradley,* 834 F.2d at 650; *Angiulo,* 897 F.2d at 1179. The principles underlying this inquiry are two fold:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.... Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Courts are increasingly emphasizing the importance of the second of these two principles based on the reality that most people do not read statutes, or court decisions interpreting those statutes, before deciding to engage in some proscribed conduct. *United States v. White,* 882 F.2d 250, 252 (7th Cir.1989); *United States v. Gardner,* 860 F.2d 1391, 1394 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1751, 104 L.Ed.2d 187 (1989); *Waldron v. McAtee,* 723 F.2d 1348, 1354 (7th Cir.1983). Nevertheless, whether it is viewed from the perspective of the prosecutor and police or from the perspective of a

potential offender, the inquiry remains the same and is one of "fair notice" that hinges on the understanding of "ordinary people." *See Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted); *Server v. Mizell,* 902 F.2d 611, 613 (7th Cir.1990); *White,* 882 F.2d at 253.

■ Thus, in this case, we must decide whether an "ordinary person" would have fair notice that the conduct charged against each defendant constitutes a "pattern of racketeering." The answer is exceedingly clear. The moving defendants are each charged with having committed numerous racketeering acts in connection with the El Rukn's criminal activities. To begin, the indictment alleges that each defendant was a member of the broad and extensive narcotics conspiracy that was at the core of El Rukn affairs. They are also each charged with membership in at least one conspiracy to murder in order to further, protect or cover up this narcotics activity. Further, these crimes were committed during lengthy associations with the El Rukns. Defendant Robinson's association with the El Rukns was for the shortest duration among the defendants but, as alleged, it lasted a full least three and half years, from January 1985 to July of 1988. During this time, although not an El Rukn member, his alleged involvement was extensive as he is charged with a total of eight racketeering acts in connection with El Rukn affairs. Each of the other five defendants, as alleged, held a formal leadership position as a general or officer and was an El Rukn member for more than a decade. These defendants are charged with anywhere from five to nineteen racketeering acts.

It is clear that such conduct is at the heart of the "pattern" requirement and well within the "continuity plus relationship" formula. As to the relatedness requirement, the alleged racketeering acts were certainly not committed in isolation. They are related by a strong "distinguish-

---

826, 834, 63 L.Ed.2d 73 (1980)). Thus, in such circumstances, because "vagueness may itself deter constitutionally protected and socially desirable conduct," courts will consider facial

challenges. *National Dairy Products Corp.,* 372 U.S. at 36, 83 S.Ct. at 599–600. This is not such a case.

ing characteristic" in that they all are heavily intertwined with El Rukn affairs. *H.J. Inc.*, 109 S.Ct. at 2901. This fact, and the fact that the El Rukn gang was a wholly criminal organization, undoubtedly satisfies the relatedness requirement. According to the Second Circuit:

> In some cases ... the relatedness ... necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise.

*United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). The court further observed that "if the racketeering acts were performed at the behest of an organized crime group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated." *Id.* at 1384; *see Angiulo*, 897 F.2d at 1180 (quoting *Indelicato*). Thus, it is clear that an "ordinary person" would be on notice that the relatedness requirement is satisfied by the type of conduct with which these defendants are charged.

It is equally clear that the continuity requirement is satisfied. According to the indictment, the El Rukn gang has, in various forms, been in existence for over two decades and, as we have stated, each of the defendants was associated with the organization for a number of years. This establishes, at a minimum, an implicit "threat of continuity." As explained by the Court in *H.J. Inc.*:

> ... the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase 'organized crime.'

109 S.Ct. at 2902. Consequently, an "ordinary person" would have abundant notice that the continuity requirement is met by the defendants' alleged conduct. Therefore, RICO's "pattern" requirement is not vague as it applies to the allegations here and the defendants' vagueness challenges must, therefore, fail.

Surely, no one has ever doubted that RICO proscribes the commission of numerous racketeering crimes at the behest of and in furtherance of a wholly criminal organization. Indeed, RICO's primary focus and expressed intent was the eradication of organized crime. *Id.* at 2904; *see also United States v. Turkette*, 452 U.S. 576, 588–93, 101 S.Ct. 2524, 2531–34, 69 L.Ed.2d 246 (1981). Thus, although it may be true that RICO is obscure at the margins, a matter to which we do not express an opinion, the defendants here are about as far away from the margins as one can get. Therefore, regardless of the validity of Justice Scalia's assessment of RICO's "pattern" requirement as to some cases, it is not unconstitutionally vague as it applies to the allegations in this case.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Counts One and Two on constitutional grounds are denied. It is so ordered.